### PEOPLE v. BERMEL.

(Supreme Court, Trial Term, Queens County. March 14, 1911.)

1. GRAND JURY (§ 36*)—WITNESSES—PRIVILEGE.
    Under Const. art. 1, § 6, prohibiting compulsory testimony against oneself, a witness before a grand jury in an investigation not directed against him cannot be compelled to give self-incriminating evidence, but, if he waives the privilege, his testimony can be used against him, but, if he is the person investigated, he cannot be legally subpœnaed or sworn, though he claim no privilege.

    [Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 75–78; Dec. Dig. § 36.*]

2. INDICTMENT AND INFORMATION (§ 10*)—PRIVILEGE—EVIDENCE—WEIGHT.
    Evidence *held* to show that an indictment for perjury was based on testimony taken in an investigation directed against accused, thus making it invalid.

    [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 868; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

3. INDICTMENT AND INFORMATION (§ 10*)—PRIVILEGE.

　　Invalidity of an indictment because accused was improperly subpœnaed before the grand jury which indicted him is not avoided, though there was other testimony to sustain the indictment.

　　[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 868; Dec. Dig. § 10.*]

Charles Bermel was indicted for perjury. On motion to quash the indictment. Motion sustained.

Frederick G. Dewitt, Dist. Atty., for the People.
John B. Merrill, for defendant.

CRANE, J. In December of 1910 Charles Bermel was indicted by the grand jury of Queens county for the crime of perjury in having sworn falsely before the grand jury of that county on the 22d day of January, 1908, regarding the receipt and disposition of $20,000, the property of his brother, Joseph Bermel. This motion is made to dismiss and quash this indictment on the ground that the defendant's constitutional rights were violated, in that he was subpœnaed before the grand jury finding this indictment in December of 1910, and compelled to be a witness against himself in a proceeding which was actually against him, and that this indictment is based upon such illegal and illegally procured evidence.

The general rule applicable to the examination of defendants before the grand jury is this: If there is being conducted a general investigation into affairs and conditions private or public, not aimed at any particular individual or individuals, and witnesses are subpœnaed and sworn before the grand jury making this investigation, a witness may claim the privilege of refusing to answer any question which might tend to incriminate him, and he cannot be compelled to answer. He cannot be compelled to be a witness against himself as to the commission of a crime before any investigation or hearing recognized by law. The Constitution of this state provides that:

　　"No person shall be held to answer for a capital or otherwise infamous crime * * * unless on the presentment or indictment of a grand jury, * * * nor shall he be compelled in any criminal case to be a witness against himself." Article 1, § 6.

If the witness upon such general investigation, not aimed at him, fails to claim this privilege or constitutional right, his testimony may be used against him, or even be the basis of an indictment. But where, on the other hand, the investigation before the grand jury is a proceeding against him, or, being ostensibly a general investigation, is, in fact, as shown by the circumstances and evidence, a proceeding against him, then the defendant's constitutional right is violated if he be subpœnaed before the grand jury, sworn and questioned, though he makes no claim of privilege or exemption. Briefly stated, if the person testifying is a mere witness, he must claim his privilege on the ground that his answers will incriminate him, whereas, if he be in fact the party proceeded against, he cannot be subpœnaed and sworn, even though he claim no privilege. People v. Gillette, 126 App. Div. 665, 111 N.

Y. Supp. 133; People ex rel. Hummel v. Davy, 105 App. Div. 598, 94 N. Y. Supp. 1037; Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; People·v. Singer, 18 Abb. N. C. 96; People v. Haines, 1 N. Y. Supp. 55; State v. Froiseth, 16 Minn. 296 (Gil. 260); State v. Gardner, 88 Minn. 130, 92 N. W. 529. The party testifying may, in fact, be the defendant or the party proceeded against, and not a mere witness, although he be not under arrest or openly charged with the crime or proceeded against in name. The title of the proceeding cannot determine rights, as constitutional protection is one of substance and not of form. If the person examined before the grand jury be in fact the one aimed at, sought for, and charged with the crime, the title of the proceeding cannot make his examination legal.

The whole question to be determined, therefore, upon this motion, is whether or not this indictment is based upon the testimony of Charles Bermel, taken before the grand jury in December of 1910, and whether at that time he was actually the person proceeded against. In January of 1908 the grand jury of Queens county was investigating the purchase of Kissena Park, and whether or not the officials of the borough had received bribes in connection therewith. Joseph Bermel had been president of the borough at the time of the purchase and his brother Charles Bermel, a tailor, and in no way connected with the borough government, was subpœnaed before the grand jury and examined as a witness regarding the moneys which it was claimed Charles Bermel had received, and more particularly whether the sum of $20,000 which he had in his possession was not in fact the property of Joseph Bermel and the proceeds of a bribe. At the time Charles Bermel was a witness, he was examined very fully, and, if his testimony thus given were false, there is no question but what he can be indicted and prosecuted for perjury. He was not then the party proceeded against. In December of 1910, as above stated, he was indicted for perjury for having sworn falsely before this grand jury of 1908, but in procuring this indictment the Deputy Attorney General did not confine himself to producing other witnesses to prove the falsity of Charles Bermel's statements, but again subpœnaed Charles Bermel. The examination resulting in the indictment for perjury was commenced December 6, 1910, and is entitled, "In the matter of the investigation ordered by the Governor of the state of New York into the affairs of the borough of Queens," but it is quite apparent that Charles Bermel's testimony was aimed directly against himself, and that the proceeding was in reality against him. The testimony he had given about this matter in 1908 was then in the hands of the examining counsel, and Charles Bermel was not questioned so much regarding his transactions with and for his brother as he was regarding the truth or falsity of his previous statements. Certain extracts taken from the testimony before the grand jury will illustrate how the proceeding was aimed directly at him:

"Q. You were subpœnaed before the grand jury for the county of Queens when the grand jury was making an investigation into the Kissena Park matter? A. Yes.

"Q. Testified there under oath? A. Yes.

"Q. Did you ever testify that on December. 1907, you deposited $15,070 in your bank account?  A. Yes.

"Q. Don't you think, in view of the fact that I have a transcript of your account, you must be mistaken in regard to this, that you probably are mistaken?  A. I may be mistaken.  I may have deposited some of my money.

"Q. You are fully aware that to give false testimony before the grand jury is perjury; you are aware of that?  A. Yes, sir.

"Q. Did you testify as follows when you were before the grand jury: 'Q. In December of 1907 you deposited $15,070?  A. Yes; that is not my money. I got it in New York of a man named Heyward.'  Q. Is that the truth?  A. If I made that statement. I made that statement by being mixed up.

"Q. How do you explain your present testimony if you swore before the grand jury that your brother arranged with Heyward, and that you went and got the money from Heyward?  A. What I am telling you is only the truth.

"Q. Then you testified falsely?  A. I must have made a mistake.

"Q. How could you make a mistake in such a matter as that?  A. I don't know.

"Q. Don't you think before you get involved any further in this matter you had better make a clean honest statement of the transaction?  A. I am trying to make it as honest as I can.

"Q. You are making statements diametrically opposed to what you said before the grand jury before.  Now we can indict you before you leave this room?  A. Now, counsellor, I cannot remember what I testified to before."

The above with much more of like nature shows that Charles Bermel was being questioned regarding his false testimony, and that the severe cross-examination was aimed directly at his alleged perjury or false swearing; that he was the person being charged with crime. Three days thereafter the witness Heyward was called and examined, at the end of whose testimony there is this note:

"Succeeding and final examination conducted by Frederick C. Dewitt, Esq., District Attorney of Queens County."

Then on the 20th of the same month, and before the same grand jury, Heyward is recalled, and the caption of the proceeding is made, "The People of the State of New York against Charles Bermel."  Other witnesses are called on the same day to give testimony against Charles Bermel regarding his perjury resulting in the indictment for perjury here attacked.  It is at once apparent that the grand jury based its indictment for perjury against Charles Bermel, not only upon the witnesses recalled upon the 20th, but also upon his testimony given two weeks before.  Two things are quite evident: First, that beginning with the examination of Charles Bermel before the grand jury of December 6th, and ending with the examination of other witnesses on the 20th, this portion of the investigation was aimed against Charles Bermel directly, as an offender charged with perjury; second, that there is nothing whatever to indicate that in indicting Charles Bermel the grand jury did not consider and act upon his cross-examination with a view to perjury; in fact, it is rather to be presumed that they did act upon it.  Consequently a substantial right of this defendant was transgressed, as, in the face of the constitutional provision that no person shall be compelled in a criminal case to be a witness against himself, he was subpœnaed and sworn as a witness and examined upon a charge of perjury directly aimed at him.

It may be said that there was sufficient testimony from the other witnesses to establish the charge of perjury, and that Bermel's testimony might be eliminated, or that a ruling to the effect that his testimony could not be used against him upon the trial would be sufficient. This is well answered in the case of State v. Gardner, supra:

"The constitutional guaranty is, not that no person should be compelled to give evidence against himself which is made the basis of an indictment against him, but it is that he shall not be compelled to be a witness against himself. This constitutional guaranty must receive a liberal construction, to the end that personal rights may be protected. Where a witness is compelled to testify against himself, the injury inheres in the violence done to his rights. The constitutional guaranty not only protects a person from being compelled to give direct evidence tending to establish his guilt, but also from giving any circumstance or link in the chain of evidence which may tend to convict him of a crime. Such disclosures might furnish the only means of discovering the names of those who could give evidence concerning the transaction."

It does not do to call a defendant before the grand jury and cross-examine him, then later call other witnesses, and base an indictment solely upon the testimony of the other witnesses, claiming that the illegal examination of the defendant can be disregarded and ignored or wiped out of the record. Such a procedure would open a very wide door for abuse and oppression. It may very well be that Charles Bermel committed perjury, and that no particular harm was done him individually by his examination before the grand jury, as he can be readily indicted again upon proper testimony, and should be, but, in the interests of orderly procedure and of those methods which heretofore have seemed wise and safe for the administration of the criminal law, I must set this indictment aside. Overzeal in honest endeavor sometimes leads to as dangerous a practice as indolence from improper motives.

This indictment, therefore, is quashed and dismissed, with directions to the district attorney of Queens county to again submit this charge of perjury against Charles Bermel to another grand jury, before which the defendant shall not be summoned and examined.