### UNITED STATES v. WETMORE et al.

(District Court, W. D. Pennsylvania. November 24, 1914.)

#### No. 23.

**1.** INDICTMENT AND INFORMATION (§ 34*) — FEDERAL COURTS — VALIDITY OF BILL—REQUISITES—INDORSEMENT—PROSECUTOR'S NAME.

Since the forms of indictments for federal offenses are governed by federal law, an indictment for conspiracy to defraud the United States, obtained at the instance of a grand jury, without a private prosecutor, was not defective because a prosecutor's name was not indorsed on the back thereof.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 138–143; Dec. Dig. § 34.*]

**2.** INDICTMENT AND INFORMATION (§ 9*)—INVESTIGATION BY GRAND JURY—ACCUSATION BEFORE COMMITTING MAGISTRATE OR COMMISSIONER.

Where an indictment was drawn and submitted to the grand jury by order of court, based on a presentment of the grand jury, it was not objectionable because not based on an accusation made before a committing magistrate or commissioner, supported by oath or affirmation.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 34; Dec. Dig. § 9.*]

**3.** INDICTMENT AND INFORMATION (§ 10*)—FINDING OF INDICTMENT—BASIS—PROCEEDINGS OF GRAND JURY.

Where the grand jury was requested by the United States attorney to investigate a charge of fraud alleged to have been committed against the United States, and in the conduct of such investigation witnesses were called before the grand jury and examined, with the result that a presentment was made against certain persons, accompanied with the request that an indictment be presented against such persons by the district attorney, and the court having so ordered, the indictment was presented, and a true bill found against the defendants, it was not objec-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tionable because not based on the personal knowledge or observation of its members, or on the testimony of witnesses who had been previously examined under oath, orally or in writing, by the court, and by it sent to the grand jury.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 50–61; Dec. Dig. § 10.*]

**4. WITNESSES (§ 305*) — PRIVILEGE — INCRIMINATION — TESTIMONY BEFORE GRAND JURY.**

Declaration of Rights Pa. § 9, provides that in all criminal prosecutions accused cannot be compelled to give evidence against himself, and Const. U. S. Amend. 5, declares that no person shall be compelled in any criminal case to be a witness against himself; but in the courts of the United States, and in those of Pennsylvania, the disability of a defendant to testify in a criminal case has been removed by statute. *Held*, that the right of a defendant to refuse to testify is a personal privilege, which he may waive; and hence, where defendants were called to testify in a grand jury investigation, concerning an alleged fraud committed by them against the United States, before any proceeding against them had been instituted, or indictment found, and they made no objection to testifying, and did not claim their privilege, an indictment subsequently found against them was not subject to a motion to quash because they testified without notice or warning that they were testifying against themselves and that they were not compelled to do so.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1053–1057; Dec. Dig. § 305.*]

**5. INDICTMENT AND INFORMATION (§ 137*)—MOTION TO QUASH—GROUNDS—DISTRICT ATTORNEY—CONDUCT BEFORE GRAND JURY.**

It was no ground for quashing an indictment that the United States attorney, examining a witness before the grand jury, asked him whether he had been told what to say by a person against whom an indictment was subsequently returned, and whether the witness had been coached by his employers.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 480–487; Dec. Dig. § 137.*]

Samuel M. Wetmore and others were indicted for conspiracy with intent to defraud the United States. On motion to quash the indictment. Denied.

E. Lowry Humes, of Meadville, Pa., for the United States.
W. S. Dalzell, of Pittsburgh, Pa., for defendants.

THOMSON, District Judge. The defendants, through their counsel, have filed a motion to quash the indictment. A rule being granted to show cause, the district attorney made answer, and both sides were fully heard on oral argument, affidavits on the part of defendants, and briefs filed.

The indictment charges the defendants with a conspiracy to defraud the United States. It is alleged that the United States, on the date mentioned, had under construction the Panama Canal, and that the Isthmian Canal Commission, appointed under the act of Congress, caused to be issued a circular, being an invitation for proposals to furnish and erect certain mitered lock gates, and for furnishing and delivering certain repair parts, including, among other things, the furnishing of certain specified nickel steel parts to be used in the construction of said gates; that the Isthmian Canal Commission awarded to the

McClintock-Marshall Construction Company the contract for the nickel steel, which was by it sublet to the Wheeling Mold & Foundry Company, and by the latter sublet to the Carbon Steel Company, which company accepted said contract and undertook to manufacture and furnish the nickel steel in accordance with the contract and specifications; that the defendants, being officers and employés of the Carbon Steel Company, combined together to defraud the United States, by deceiving the inspectors of the Isthmian Canal Commission, stationed at the mill of said company to inspect the nickel steel so to be furnished to the government; that they were thereby deceived and induced to accept material which was not in accordance with the contract and specifications.

The government instituted an investigation by the grand jury of this district, under which a large number of witnesses were called before it and examined, among them being Samuel M. Wetmore, James E. Lacy, and Henry Lutz, three of the defendants. This investigation resulted in a presentment by the grand jury against the above-named five defendants, the grand jury therein requesting the court that the United States attorney be instructed to lay before the grand jury a bill or bills of indictment against said defendants. Thereupon the court made the following order:

"And now, to wit, May 21, 1914, the foregoing presented in open court and ordered to be filed; and it is further ordered that the United States attorney prepare and present an indictment to the grand jury as recommended."

A bill of indictment was accordingly prepared and presented to the grand jury, on which a true bill was found and returned to the court. The reasons assigned in the motion to quash the indictment are as follows:

"(1) Because the name of the prosecutor is not indorsed upon the indictment, as required by law.

"(2) Because the indictment is not based upon an accusation before a committing magistrate or commissioner, founded upon probable cause and supported by oath or affirmation, as required by law.

"(3) Because the indictment is not based upon a presentment by the grand jury, made from the personal knowledge or observation of its members, or upon the testimony of witnesses who had been previously examined under oath, orally or in writing, by the court, and by the court sent before the grand jury.

"(4) Because the offense charged in the indictment is not of such a nature as that the grand jury, at the instance of the court, should be directed to proceed to its investigation.

"(5) Because three of the defendants named in the indictment namely, Samuel M. Wetmore, J. E. Lacy, and Henry Lutz, were brought before the grand jury under legal process, and compelled to testify, without any notice or warning that they were testifying against themselves, which is contrary to the Bill of Rights of the commonwealth of Pennsylvania, and to the fifth amendment of the Constitution of the United States.

"(6) Because the United States attorney acted in an illegal and highly improper manner, and in derogation of the defendants' rights, in demanding to know of a witness, in the presence of the grand jury, and who was under oath, whether he had been told what to say by Lacy, one of the above-named defendants, who had just preceded the witness before the grand jury, and, further, in demanding to know of another witness, in the presence of the grand jury, and who was under oath, whether he had been coached as to what to say by his employers."

··· These will be considered in their order.

[1] The first raises the question whether it is essential to the validity of a bill of indictment in the United States court that a prosecutor's name be indorsed on the back thereof. The practice in the state courts on this subject is regulated by Act of Assembly of March 31, 1860 (P. L. 437) § 27, providing as follows:

"No person shall be required to answer to any indictment for any offense whatsoever, unless the prosecutor's name, if any there be, is indorsed thereon, and if no person shall avow himself the prosecutor, the court may hear witnesses, and determine whether there is such a private prosecutor, and if they shall be of opinion that there is such a prosecutor, then direct his name to be indorsed on such indictment."

This section was taken from a clause of the act of 1705 (1 Smith's Laws, p. 56), under which legislation it was held that no indorsement was necessary where no person was active in carrying on the prosecution. King v. Lukens, 1 Dall. (Pa.) 5, 1 L. Ed. 13. The indorsement of the name is·not conclusive, and the petit jury in imposing costs may designate the actual prosecutor. Commonwealth v. Ream, 1 Pa. Co. Ct. R. 33. It was held that, where an indictment was based on a constable's return in the discharge of his official duty, it is not required that the name of the prosecutor be indorsed thereon. Com. v. New Bethlehem, 15 Pa. Super. Ct. 158.

The practice in formulating indictments in the United States courts is regulated by federal statutes, and not by state laws. Atwell on Federal Criminal Law, p. 35, at section 17, says:

"It is entirely immaterial what provisions the various states make with reference to the forms of indictments therein; the federal statutes control in the enforcement of the federal criminal law."

Under a statute requiring an indictment to be indorsed "by the prosecutor," such indorsement is necessary only in case there is in fact an existing prosecutor. King v. Lukens, 1 Dall. (Pa.) 6, 1 L. Ed. 13. If in fact there were a private prosecutor in this case, which does not in any manner appear, the failure to indorse his name upon the bill would be at most a formal defect, such as would not vitiate the indictment or be ground for quashing the same. Section 1025 of the Revised Statutes (Comp. St. 1913, § 1691) provides:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

. We think the first reason is without merit.

· [2] Second. Is it essential to the validity of an indictment that it be based upon an accusation made before a committing magistrate or commissioner, supported by oath or affirmation? It was said in McCullough v. Commonwealth, 67 Pa. 30:

"It has never been thought that the ninth section of the ninth article of the Constitution, commonly called the Bill of Rights, prohibits all modes of originating a criminal charge against offenders, except that by a prosecution before a committing magistrate. Had it been so thought, the court, the Attorney General, and the grand jury would have been stripped of powers uni-

versally conceded to them. In that event the court could give no offense in charge to the grand jury, the Attorney General could send up no bill, and the grand jury could make no presentment of their own knowledge; but all prosecutions would have to pass first through the hands of inferior magistrates, for in all the instances mentioned the defendant could not be heard by himself or his counsel, demand the nature or cause of accusation, or meet the witnesses face to face, until after the bill had been found by the grand jury.

"In the federal courts, and in some of the states, it has been held that the grand jury alone may call witnesses and institute all prosecutions of their own motion, and without the agency of the district attorney. 1 Whart. C. L. (Ed. 1868) §§ 453, 458. In this state the power of the grand jury is more restricted, and the better opinion is that they can act only upon and present offenses of public notoriety, and such as are within their own knowledge, such as are given to them in charge by the court, and such as are sent up to them by the district attorney; and in no other cases can they indict without a previous prosecution before a magistrate, according to the terms of the Bill of Rights. 1 Wh. C. L. (Ed. 1868) § 458, and note. It has, therefore, been held not to be allowable for individuals to go before the grand jury with their witnesses and to prefer charges. Such conduct is looked upon as a breach of privilege on part of the grand jury, and as a highly improper act on part of such volunteers. Its effect is to deprive the accused of a responsible prosecutor, who can be made liable in costs, and also to respond in damages for a false and malicious prosecution. It is in violation of the act authorizing the defendant to refuse to plead until the name of a prosecutor be indorsed on the bill of indictment. The usual course, where a presentment is thus surreptitiously procured, and bill founded upon it, has been to quash the indictment on motion, and before plea pleaded. It is the only way to reach the wrong. But when the bill has been regularly sent up by the district attorney, under the sanction of the court, upon the return of a proper officer, as in this case, the bill cannot be quashed unless for matters apparent on the face of the record. The court was, therefore, right in refusing to quash the indictment, and the sentence of the defendant is affirmed."

Brown v. Commonwealth, 76 Pa. 319: Indictments were found against Brown, one for the murder of Kraemer and the other for the murder of Kraemer's wife. On the indictment for the murder of the husband he was convicted, sentenced to be hanged, and on appeal the judgment was reversed. The district attorney then sent a new bill of indictment to the grand jury for the murder of the wife, which was returned "A true bill." A motion to quash was made, which was overruled, the prisoner convicted, and an appeal taken. On this assignment of error Chief Justice Agnew said:

"That a bill of indictment may be sent up to the grand jury by the Attorney General, or now, by the district attorney, with the sanction of the court, is shown in McCullough v. Commonwealth, 67 Pa. 30. It does not appear that the bill before us was sent up surreptitiously."

In Harrison v. Commonwealth, 123 Pa. 508, 16 Atl. 611, the defendant was convicted upon an indictment which did not properly charge the offense, and a new trial was granted. A new bill was sent to the grand jury by the district attorney, with the consent of the court. This indictment charged a different offense, although it referred to the same transaction intended to be charged in the first. The Supreme Court (123 Pa. at page 515; 16 Atl. 612) said:

"It was urged that this charge did not conform to the information, which was for receiving stolen goods. This is true, but the indictment was what is sometimes called a district attorney's bill; that is, a bill sent to the grand jury by that officer, upon his official responsibility, and by leave of court. A

bill so sent cannot be quashed, unless for matters appearing upon its face. McCullough v. Commonwealth, 67 Pa. 30."

Under the authorities, we could not quash the indictment because it was not based upon an accusation before a committing magistrate or commissioner, as it was drawn and submitted to the grand jury by order of court, based upon a presentment of the grand jury.

[3] The third reason assigned is that the presentment of the grand jury, upon which the indictment was based, was not made from the personal knowledge or observation of its members, or upon the testimony of witnesses who had been previously examined under oath, orally or in writing, by the court, and by the court sent before the grand jury. This reason assigned is closely akin to the second which has been considered. It is very true that the usual and ordinary course of proceeding is by information, upon which the defendant is given a hearing. But under the authorities this is by no means always a legal prerequisite to an indictment. Rolland v. Commonwealth, 82 Pa. 405, 22 Am. Rep. 758.

In Commonwealth v. Green, 126 Pa. 531, 17 Atl. 878, 12 Am. St. Rep. 894, cited and strongly urged by defendants' counsel in support of their motion, the Supreme Court, after referring to a complaint under oath as the usual method of instituting a criminal proceeding, says:

"Whilst this is the usual method pursued in criminal procedure, there are certain exceptions or extraordinary modes of preferring criminal charges, well recognized in practice. These extraordinary modes of criminal procedure are very well defined and set forth in the footnotes of Wharton's Criminal Law at page 458."

The three exceptions referred to are: First, "where criminal courts of their own motion call the attention of grand juries to, and direct the investigation of, matters of general public import, which from their nature and operation in the entire community, justify such intervention;" second, "where the Attorney-General, ex officio, prefers an indictment before a grand jury, without a previous binding over or commitment of the accused;" and, third, that which is originated by the presentment of a grand jury.

In this case the grand jury was requested by the United States attorney to make an investigation of a certain charge of fraud alleged to have been committed against the United States while the latter was engaged in the construction of a great public work, for the purpose of determining the parties properly chargeable with such fraud. In the conduct of such investigation witnesses were called before the grand jury and examined, with the result that a presentment was made by the grand jury against certain persons, accompanied with a request that an indictment be presented against such persons by the district attorney. The court having so ordered, the indictment was presented, and a true bill found against the defendants. While it is certainly true that this procedure is not the usual method, under the authorities we cannot condemn it as illegal, and we are not prepared to say that the circumstances of the case and the public interests did not reasonably require such action to be taken. See Hale v. Henkel, 201 U. S.

43, 26 Sup. Ct. 370, 50 L. Ed. 652, where the authorities are fully reviewed.

The fourth reason assigned in the motion is covered by the discussion of the second and third reasons, and the conclusion therein reached.

[4] The fifth reason raises a very broad and important question. It is urged that Samuel M. Wetmore, J. E. Lacy, and Henry Lutz were brought before the grand jury under legal process and compelled to testify, without any notice or warning that they were testifying against themselves, contrary to the Bill of Rights of the commonwealth of Pennsylvania and to the fifth amendment of the Constitution of the United States. As the law of the case usually depends upon the facts, these must be stated.

The motion to quash is supported by certain ex parte affidavits, and is replied to by answer of the District Attorney. From the indictment itself, and affidavits in support of defendant's motion, and the answer thereto, the following facts appear:

At the request of the United States attorney an investigation was instituted by the grand jury of an alleged fraud claimed to have been perpetrated upon the government in the furnishing of certain steel by the Carbon Steel Company to the United States in the construction of the Panama Canal. Witnesses were called before the grand jury, being regularly summoned by subpœna issued out of this court, and examined by the district attorney, among others, the three above named, who were afterwards indicted. These men, and none of the other witnesses, so far as appears, were not notified by the district attorney that they were the subjects of inquiry in the investigation then proceeding. It is not alleged, nor does it in any manner appear, that the said defendants, or any of them, claimed any immunity or privilege from testifying as witnesses, that they made any objection to being sworn or testifying, nor is it shown that the testimony elicited from them tended to incriminate them. On the other hand, it is alleged in the answer of the district attorney that they were not compelled to testify as to any matters which might tend to incriminate them, and that the said three named persons gave to the grand jury no material testimony relative to the matters and things charged in the indictment in this case, but, on the contrary, denied all knowledge of the matters under investigation.

We are then confronted with the broad question whether the mere fact that these men were called, among others, as witnesses in an investigation, which later resulted in an indictment against them and others, renders such indictment invalid. It is urged with great force by defendant's counsel that this proceeding violates section 9 of the Declaration of Rights of the Constitution of Pennsylvania, which declares that "in all criminal prosecutions the accused * * * cannot be compelled to give evidence against himself"; and that it also violates the fifth amendment to the Constitution of the United States, which provides that "no person * * * shall be compelled in any criminal case to be a witness against himself.".

In the courts of the United States, and in those of Pennsylvania,

the disability of a defendant to testify in a criminal case has been removed by statute. These statutes are in his interest solely. He may stand mute, or testify, as he will. This right does not arise under the Constitution, but under the statutes, which remove his disability. Before they were passed he could not be compelled to testify adversely to his own interest, because he was not competent to testify at all. The disability continues, unless he chooses to waive it. The prosecution cannot even ask him to be sworn, as this would compel him to make choice in the presence of the jury, which might tend to prejudice his rights.

This protection, under the statutes and the Declaration of Rights in the Constitution of Pennsylvania, relates solely to defendants. On the other hand, the provision in the Constitution of the United States is not confined, or even directed, to defendants. It is for the protection of witnesses, without respect to their connection with the proceedings. This amendment to the Constitution was adopted at a time when defendants could not testify, either for or against themselves, and therefore it could not be construed as referring to defendants as such. It of course includes defendants, if they belong to the class of competent witnesses. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. When the disability with reference to defendants was removed by statute, they then came within the constitutional provision, not because they were defendants, but because they were witnesses.

It has been held that a person cannot be regarded as a defendant, so as to render him such an incompetent witness, until some process is directed against him. United States v. Brown, 1 Sawy. 531, Fed. Cas. No. 14,671; United States v. Reed, 2 Blatch. 435, Fed. Cas. No. 16,134. A case very much like the present one is United States v. Kimball et al. (C. C.) 117 Fed. 156, in the Southern district of New York. The failure of a national bank was under investigation by the grand jury, there being no formal complaint or accusation, and certain officers of the bank, together with a large number of other witnesses, were called before the grand jury and were examined. Kimball, the president, Rose, the paying teller, and Poor, an officer of the bank, were afterwards indicted and a motion was made similar to the motion here, to quash the indictment on the ground that they had been compelled to give testimony against themselves. Affidavits were filed in support of the motion which were replied to simply by the answer of the district attorney. It seems that Rose, before he testified, had been advised by counsel. Kimball was advised by the United States attorney that he was at liberty to refuse to answer any questions, and that whatever he said would not be used against him elsewhere, whereupon he willingly gave his testimony. Poor was not advised by the United States attorney, but raised no objection to testifying. In a very exhaustive opinion, Thomas, District Judge, overruled the motion to quash the indictment. In the opinion he says:

"The defendants' position that, if the present defendants were not such during the investigation, they became later specific subjects of consideration, and that the evidence taken during the general investigation could not, un-

der section 860, be used to indict them, is untenable. They did not become defendants in the matter before the grand jury until the indictment was found, and the evidence taken prior to such indictment was at all times a part of the same proceeding. Had they been arrested upon warrant issued by a court or commissioner, they would have been defendants under that warrant, and, had they been held under any legal process, they might have been regarded as such. But that a person not even the subject of a complaint is a defendant is the merest chimera."

The court quotes approvingly the position taken in that case by the United States attorney with reference to the defendants' construction of the constitutional provision as follows:

"(1) It would mean that the grand jury as an inquiring body has no right to issue its process to any person who might know or have knowledge concerning any crime to be investigated, if there should be any chance that the person so subpœnaed might in any way become criminally involved in the crime under investigation, and therefore subject to an indictment, and would entail upon that body the impossibility of ascertaining in advance whether there could be any chance of the witnesses' culpability becoming apparent.

"(2) It would mean that an indictment would be invalid if the person against whom it was found had been subpœnaed to appear before the grand jury, had appeared, and had been interrogated concerning the participation of any other person in the charge.

"(3) It would absolutely destroy the usefulness of a grand jury to inquire into crimes generally, or into violations that have been brought to their notice, other than cases that had been held for the grand jury by the respective committing magistrates.

"(4) It would mean that the compulsion denounced in the constitutional amendment begins the moment the process of the grand jury is actually served upon the party to whom it is directed, provided he is in any way connected with the event."

In discussing the question of the compulsion referred to in the constitutional provision, the same judge said:

"The provision means that no person shall be forced to be a witness against himself against his free will. This does not mean that he may not be a witness against himself; otherwise, an accomplice could not testify. It does not mean that any person may not be called and sworn (barring persons under known legal disability). It is an exception that leaves all persons competent to be witnesses, subject to a call to testify, but enables any of such persons to exempt himself from the whole class by pleading that certain evidence which he is called upon to give will tend to show that he has committed an offense. Hence those competent and free-willed to do so may give evidence against the whole world, themselves included; but those unwilling may not be coerced, if it appear that the unwillingness arises from incriminating evidence which they are asked to give. But willingness or unwillingness is subjective, and may be known alone by act, conduct, speech, or perhaps, in extreme cases, by condition. Unless the witness exhibit his unwillingness in some manner, it cannot be presumed to exist. This is especially true, if his conduct be that of a man untrammeled, if he be free from bodily restraint or physical duress, unterrified by menace, and uninfluenced by cajolery or fraud. Presumptively the person summoned belongs to the general body of citizens, competent to testify, and so he may be considered. If he elect to be excepted from this class, he must speak, or his condition or relation to the proceeding must speak for him; for exemptions are allowed only to those who ask for them. Nor is this statement the less true because, as will later appear, he should have a fair opportunity to speak. From this it follows that in a legal sense the doctrine of waiver has no application. The Constitution intends that a person shall not give incriminating evidence under compulsion. Immunity from compulsion is the right reserved."

As a result of the discussion the learned judge said:

"This leads to the further conclusion that all persons, unless incompetent to be witnesses (and named defendants in criminal proceedings are under such disability), may be summoned and sworn and examined; that if one of such class be unwilling to testify, upon the ground that he would become a witness against himself, he must express his unwillingness in some form, and bring himself within the rule that he who would have the benefit of an exemption or privilege must claim it."

It seems to me that under the various decisions in the federal courts the distinction turns, in the case of a witness who is not named as a defendant, on the question whether the witness has or has not claimed the privilege of refusing to testify, on the ground that his testimony would tend to criminate him. In Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, the grand jury in attendance upon the District Court of the United States for the Northern District of Illinois, was investigating certain alleged violations of an act of Congress entitled "An act to regulate commerce," by the officers and agents of the Chicago, Rock Island & Pacific Railroad Company, and those of the Chicago, St. Paul & Kansas City Railroad Company, and other lines of railroad in that district. Counselman appeared before the grand jury in response to a subpoena, was sworn, asked certain questions, and was then asked if he had obtained a rate for the transportation of grain on any of the railroads coming to Chicago at less than. the tariff or open rate. He declined to answer, on the ground that it might tend to incriminate him. Other similar questions were asked, which he declined to answer on the same ground. The court, after hearing, held him to be in contempt. A writ of habeas corpus was then taken out, was heard by the Circuit Court, and the writ discharged. On appeal to the Supreme Court of the United States the judgment was reversed. The court in its opinion quoted section 860 of the Revised Statutes as follows:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture: Provided, that this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering or testifying as aforesaid."

The Supreme Court held that this section was not as broad as the constitutional amendment; that, while it was true that any evidence which might have been obtained from Counselman by means of his examination before the grand jury could not be given in evidence, or used against him or his property, in any court of the United States, in any criminal proceeding, this protected him simply against the use of his testimony against him or his property, but had no other effect; that it could not prevent the use of his testimony to search out other testimony to be used in evidence against him, or his property, in a criminal proceeding in such court; that it could not prevent the obtaining and the use of witnesses and evidence which should be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer,

he could not possibly have been convicted; that legislation cannot detract from the privilege afforded by the Constitution; and that the protection of section 860 is not coextensive with the constitutional provision. The court used this language:

"The manifest purpose of the constitutional provisions, both of the states and of the United States, is to prohibit the compelling of testimony of a self-criminating kind from a party or a witness."

And again:

"We are clearly of opinion that no statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him can have the effect of supplanting the privilege conferred by the Constitution of the United States. * * * In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates."

It would seem to follow, from this and other opinions, that if no such compulsion exists there is no violation of the constitutional provision.

In Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, the defendant had been subpœnaed before a grand jury in the District Court for the Western district of Pennsylvania, in relation to a charge under investigation against certain officers and agents of the Allegheny Valley Railroad Company, which was alleged to have violated the Interstate Commerce Act. Comp. St. §§ 8563–8604. Brown, after testifying that he was auditor of the railway company, was asked concerning his knowledge as to whether the railway had transported coal, for a certain company, at a less rate than the established rates in force, to which he answered:

"That question, with all respect to the grand jury and yourself, I must decline to answer, for the reason that my answer would tend to accuse and incriminate myself."

He refused to answer other questions on the same ground. Being adjudged in contempt, he took out a writ of habeas corpus from the Circuit Court, and the writ being dismissed, he appealed. The judgment was affirmed by a majority of the court, on the ground that the act of Congress of February 11, 1893, affords absolute immunity against prosecution, federal or state, for the offense to which the question relates, and deprives the witness of his constitutional right to refuse to answer.

In Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, Hale, a member of a firm, was subpœnaed to produce certain books and papers of his company, to testify before the grand jury, in a certain action between the United States and the American Tobacco Company and the McAndrews & Forbes Company. An investigation was pending, but no information or other formal action had been taken. He refused to answer certain questions for several reasons, one being that the answer might tend to incriminate him. He was held in contempt, ordered to answer, a writ of habeas corpus sued out by him was discharged, and the petitioner remanded, whereupon he appealed. The judgment was affirmed. As the petitioner had denied the power of the grand jury, in the absence of any prior or

formal accusation, to compel him to testify, the opinion deals first with the general powers of the grand jury. Quoting Justice Brewer in the case of Frisbie v. United States, 157 U. S. 160, 15 Sup. Ct. 586, 39 L. Ed. 657, the opinion states:

"In this country it is for the grand jury to investigate any alleged crime, no matter how or by whom suggested to them, and, after determining that the evidence is sufficient to justify putting the suspected party on trial, to direct the preparation of the formal charge or indictment."

The court further said:

"We deem it entirely clear that, under the practice in this country at least, the examination of witnesses need not be preceded by a presentment or indictment formally drawn up, but that the grand jury may proceed, either upon their own knowledge, or upon the examination of witnesses, to inquire for themselves whether a crime cognizable by the court has been committed, that the result of their investigations may be subsequently embodied in an indictment, and that in summoning witnesses it is quite sufficient to apprise them of the names of the parties with respect to whom they will be called to testify, without indicating the nature of the charge against them."

This case held that the fifth amendment operates only where a witness is asked to incriminate himself, and does not apply if the criminality is taken away; that a witness cannot refuse to testify before a federal grand jury in face of a federal statute granting immunity from prosecution as to matters sworn to, although the immunity might not extend to prosecutions in a state court.

In the case under consideration, there being no proof that the testimony given by the three defendants before the grand jury incriminated or tended to incriminate them, and it appearing that they made no objection, or claimed any immunity from testifying on the ground that their testimony might tend to incriminate them, we think there was no violation of the constitutional provisions which protect a witness from testifying against himself, and therefore the fifth reason assigned in the motion to quash cannot be sustained.

[5] There is nothing in the questions complained of in the last reason which would justify us in quashing the indictment. These were directed to a witness, not a defendant, in his separate examination before the grand jury.

In denying the defendants' motion to quash, we do not wish to be considered as lending our sanction generally to the practice of instituting criminal prosecutions by an investigation before a grand jury. The right of a defendant to a preliminary hearing before a magistrate or commissioner, to be informed of the nature of the charge against him, to be confronted with his accuser, and to meet the witnesses against him face to face—these are high prerogatives of the citizen, established by immemorial usage and precedent in the interest of individual freedom; and they should only be departed from in those exceptional or extraordinary cases where the public interest, always paramount, would seem to justify or demand it.

The defendants' motion to quash the indictment is overruled.