**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patrick J. SCULLY, Defendant-
Appellant.**

**No. 222, Docket 23366.**

United States Court of Appeals
Second Circuit.

Argued April 19, 1955.

Decided July 26, 1955.

Jesse Moss, New York City, for defendant-appellant.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City (Arnold Bauman, Frederic S.

Nathan and John J. Donahue, Asst. U. S. Attys., New York City, of counsel), for plaintiff-appellee.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

MEDINA, Circuit Judge.

The evidence disclosed a well-implemented scheme, in continuous operation for many months, to defraud the government in the purchase of stationery supplies and printing for use in connection with the construction of North African air bases. Scully was purchasing agent for a joint venture of two engineering firms, Skidmore, Owings & Merrill, and Porter-Urquhart, which held a cost-plus-fixed fee contract with the government, and one Waldman, the other principal co-conspirator, was a stationery and printing supplier. The methods employed by these two, with the cooperation of several others, to circumvent the competitive bidding and other procedures designed to protect the government were many and various, including the giving of secret information enabling Waldman to put in the lowest bids, collusive bids, the use of "phony telephone bids" and numerous forgeries. There was also proof of substantial cash payments by Waldman to Scully over a considerable period of time.

■ Some of the rulings on matters of evidence are assigned as errors and it is claimed that the trial judge in his charge "twists the evidence" and that some of his remarks during the trial constituted "a method of evasion" to give the jury wrong impressions. The evidence points are of trivial consequence and we find no basis whatever for the charges levelled against the trial judge.

But the appeal also brings up for review an order of Judge Goddard denying appellant's motion to quash the indictment on the alleged ground that appellant had been subpoenaed to testify before the Grand Jury, that he did so testify and that although the "authorities had already marked the defendant for prosecution, intended to indict him and were engaged in bringing his indictment about," he was nevertheless not "advised of his constitutional right against self-incrimination." It would be a sufficient answer to this contention to state that it is far from clear on this record that appellant was marked for prosecution, or that the prosecution was aimed at him or that he was, at the time he testified, in any sense accused of the crime subsequently charged against him.[1] Nor does it appear that he was unaware of his rights or that, had he been warned, he would not have testified as he did. Indeed, he testified without demur, consulted a lawyer and then voluntarily gave further testimony before the Grand Jury.

The question, however, is an interesting and important one, on which there appears to have been no definitive ruling by this court, and Judge Goddard's decision, 119 F.Supp. 225, following a line of cases decided by District Judges in this Circuit, and others, was based upon a distinction between the rights of a party, on the one hand, and those of a witness on the other. In other words, it has been held by various District Judges in this Circuit that until a formal charge is openly made against the accused, either by indictment presented or information filed in court or by complaint before a magistrate, there is no violation of constitutional right by eliciting testimony from a person called before a Grand Jury and not previously warned or advised that he has a con-

1. In his affidavit submitted in support of the motion to quash the indictment defendant asserted that in the course of his interrogation before the Grand Jury he was asked what he would say if he were told that it had been testified before the Grand Jury that on at least twenty occasions he had ordered bids to be rigged, and that he was also asked to explain deposits in his bank account of $4000 more than he had earned. Whether or not these questions were answered does not appear. But both at the time of his first appearance and again later, after he had consulted a lawyer, defendant asserted his complete innocence of any wrongdoing.

stitutional right to refuse to answer questions, the answers to which may incriminate him. United States v. Klein, D.C.S.D.N.Y.1954, 124 F.Supp. 476; United States v. Kimball, C.C.S.D.N.Y. 1902, 117 F. 156; cf. United States v. Lawn, D.C.S.D.N.Y.1953, 115 F.Supp. 674. See also United States v. Miller, D.C.E.D.Pa.1948, 80 F.Supp. 979; United States v. Wilson, D.C.Del.1942, 42 F.Supp. 721; United States v. Benjamin, 2 Cir., 1941, 120 F.2d 521; Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566; United States v. Wetmore, D.C.W.D.Pa. 1914, 218 F. 227.

We think this distinction may be artificial and unsound. It apparently stems from an effort to analogize the rights of witnesses and parties appearing before a Grand Jury to those of witnesses and parties at a criminal trial. The reasoning appears to be: Since upon a trial, a defendant, as distinguished from a witness, may not be called by the prosecution, and takes the stand only if he chooses to do so, similarly, before a Grand Jury, a person already indicted or against whom a criminal information or complaint has previously been filed should not be called and asked any questions, unless he evinces a willingness to be a witness and to waive his right to refuse to give self-incriminating testimony. It is concluded that there can be no effective waiver unless such a "defendant" has been informed of his rights and hence understands what he is doing, United States v. Lawn, supra, cf. Mulloney v. United States, supra, whereas, a mere witness, who may be called upon to testify at a trial without regard to his wish in the matter, may similarly be called to testify before a Grand Jury, and need not be formally warned but must assert his Fifth Amendment privilege, if he chooses to avail himself of its protection, just as he would at a trial, by asserting it as the basis for his refusal to answer specific questions.

■ Upon closer examination, however, it becomes apparent that the prin-

ciple which underlies the rule that the defendant in a criminal trial may refrain even from being sworn as a witness, has no application to proceedings before a Grand Jury. See United States v. Benjamin, supra, 120 F.2d at page 522.

As many of us learned for the first time when reading Dickens' Pickwick Papers, parties, including a defendant in a criminal case, were not competent to testify at common law, although in treason cases, and perhaps others, a defendant was sometimes permitted to make an unsworn statement. To trace the general statutory pattern in the various states which marks the jettison of this ancient folly would be a mere display of learning, and of little assistance in the solution of the problem before us. Suffice it to say that the present federal statute provides that "the person charged shall, at his own request, be a competent witness", 18 U.S.C.A. § 3481; and this continues in force earlier enactments which removed a defendant's incapacity to testify in his own defense in a criminal case, but left the choice to him. See Brown v. United States, 9 Cir., 1932, 56 F.2d 997. As is commonly the case, there was a reason for the particular wording of this enabling act, and this reason is to be found in the Fifth Amendment. "The purpose of the law was to make defendants competent witnesses, but at the same time preserve to them the right to remain silent without prejudice." Wolfson v. United States, 5 Cir., 1900, 101 F. 430, 436, certiorari denied, 1901, 180 U.S. 637, 21 S.Ct. 919, 45 L.Ed. 710. This led to the rule that a defendant may not be called as a witness by the prosecution, for if he were sworn and thus forced in open court to refuse to answer questions on the ground that the answers might incriminate him, the "option of refusal," to which Professor Wigmore alludes,[2] would be diluted. It would be difficult thereafter to take effective steps to prevent a jury, charged with the responsibility of determining the guilt or in-

2. Wigmore, Evidence, § 2268 (3rd Ed. 1940).

nocence of the accused, from inferring guilt from the assertion of the constitutional privilege. The result thus arrived at avoids, as it should, any encroachment upon the rights guaranteed by the Fifth Amendment. See Wolfson v. United States, supra.

■ These considerations do not apply to the inquisitorial proceedings of a Grand Jury. Such a body is not charged with the duty of deciding innocence or guilt and, for this reason, its proceedings have never been conducted with the assiduous regard for the preservation of procedural safeguards which normally attends the ultimate trial of the issues. Thus, in such proceedings, there is no right to counsel, no right of confrontation, no right to cross-examine or to introduce evidence in rebuttal and ordinarily no requirement that the evidence introduced be only such as would be admissible upon a trial. See United States v. Costello, 2 Cir., 1955, 221 F.2d 668.

If, as and when the question, whether the bundle of rights in the Fifth Amendment includes that of a defendant, already charged as by indictment, to a warning when subsequently called to testify before a Grand Jury, is squarely before us, it seems not unlikely that reasons other than the distinction between parties and mere witnesses, above referred to, may convince us that, under certain circumstances or absolutely, a warning is required. We do not now say that it is not, but only that this court has not ruled on the point.

It is at least clear that a prudent prosecutor, to forestall the possibility of error, will in such cases give a warning. Indeed, one would suppose that, as a matter of ethics or fair play or policy, a prosecutor would in all cases refrain from calling as a witness before a Grand Jury any person who is *de jure* or *de facto* an accused. The absence of appeals to this court involving the problem under discussion would seem to indicate that some such rule or practice is ob-served in the prosecutors' offices in this circuit.

■ And so we now hold that the mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment, when summoned to give testimony before a Grand Jury. We shall decide other cases as they arise.

Affirmed.

FRANK, Circuit Judge (concurring in the result).

For reasons I shall state later, I concur in the result. But my colleagues' opinion contains matter with which I disagree.

1. I do not agree that "the principle which underlies the rule that the defendant in a criminal trial may refrain even from being sworn as a witness, has no application to proceedings before a Grand Jury." Nor do I agree that the history of the privilege and that of the removal of a defendant's disability to testify in a criminal case bear out that differentiation.

Indeed, I think that the policy embodied in the privilege against self-incrimination has greater force when a man, already indicted, is called by the prosecutor to testify before a grand jury; for, unlike the defendant at the trial, the defendant before the grand jury appears without counsel to advise him of his privilege. Accordingly, I think the necessity of warning such person is even greater than after the trial commences. Therefore, I believe that United States v. Lawn, D.C.S.D.N.Y., 115 F.Supp. 674, states the correct rule.

2. Several state and federal courts have gone further in holding or indicating that warning is necessary if it unmistakably appears that, when a witness is under subpoena before a grand jury, the prosecutor then intends to seek the witness' indictment. See, e. g., United States v. Edgerton, D.C.Mont., 80 F. 374; People v. Gillette, 126 App.

Div. 665, 111 N.Y.S. 133; People v. Luckman, 164 Misc. 230, 297 N.Y.S. 616, 618–619; People v. Rauch, 140 Misc. 691, 251 N.Y.S. 454, 456–457; People v. Bermel, 71 Misc. 356, 128 N.Y.S. 524; State v. Allison, 116 Mont. 352, 153 P.2d 141; State v. Smith, 56 S.D. 238, 228 N.W. 240; State ex rel. Poach v. Sly, 63 S.D. 162, 157 N.W. 113; cf. Marcello v. United States, 5 Cir., 196 F.2d 437, 441; Maffie v. United States, 1 Cir., 209 F.2d 225, 228–229.[1]

The government argues that any such rule would be most undesirable since it would require or permit an inquiry into the prosecutor's intentions. That seems to me an inadequate argument. For ease of enforcement of criminal laws should not, I think, be a factor when the privilege against self-incrimination is involved. The Supreme Court has said that the constitutional privilege against self-incrimination and the constitutional privilege of immunity from an unreasonable search and seizure are in the nature of twins. Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 29 L.Ed. 746. It is therefore noteworthy that the Fourth Amendment authorizes a search or seizure upon a showing of reasonable cause while an intrusion on the Fifth Amendment privilege against self-incrimination is invalid without regard to its reasonableness.[2] I think, however, it would be improper to permit such an inquiry if the subsequently indicted witness merely alleged, without more, that such had been the prosecutor's intention. I think it should be a condition that the indicted person state under oath, at least on information and belief, specific facts pointing very clearly to the existence of such an intention. As I have said elsewhere concerning a closely analogous situation: "Of course, an attack on an official's decision, by recourse to off-the-record evidence, is not allowed if the allegations are vague: Legality should be more than well-ordered paper work, but allowable peering behind the paper facade has its limits. One may not compel an official to submit to courtroom interrogation in the search for possible concealed, unlawful behavior, unless one first brings forward some striking traces of it. As a consequence, well-concealed [official] misconduct may escape judicial correction. That is the price we pay to avoid having governmental action at the mercy of anyone who voices mere suspicions. For instance, to open up the judgment in the Root Refining case [Root Refining Co. v. Universal Oil Products Co., 3 Cir., 169 F.2d 514], it would not have sufficed to allege, without more, 'The judge was bribed.' There must be an offer to prove specific facts which will pretty plainly impugn the official record. * * * Surely we would not refuse to act in a case like Root Refining on a sufficiently specific charge that a judge had been bribed to decide the case, merely because the facts, necessarily not within the first-hand knowledge of the party so charging, were stated on such information and belief. In a variety of circumstances, it has been held that such an allegation suffices where, as here, the asserted facts are thus not within affiant's personal knowledge. I think the district court should be directed to afford relator an opportunity to prove those facts, just as in the Root Refining case the Supreme

---

1. Were that rule applicable here, I would hold as follows:
    (a) It would be improper to conjecture that the defendant, if he had been warned, might nevertheless have testified voluntarily.
    (b) So, too, a conjecture that he knew his privilege; Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 277–278; Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

    (c) If he gave answers before the grand jury without a warning, the error would not be cured by the fact that, desiring to explain those answers, he later voluntarily appeared, on advise of counsel, and testified before the grand jury.

2. See Fortas, The Fifth Amendment, 25 J. of Cleveland Bar Association (1954) 96, 99.

Court ordered a trial of the movant's charge of bribery".[3]

But here we need not consider that problem. For defendant's affidavit, presented to Judge Goddard on the pretrial motion to quash the indictment, did not allege that the prosecutor intended to indict defendant when he was called before the grand jury. The affidavit states merely: "That at the time of your deponent's compulsory appearance and testimony before the Grand Jury, it was evident from the questions of Mr. Kilsheimer, the Assistant U. S. Attorney in charge of the proceeding, that your deponent was to be named as a defendant herein. This was evident from the fact that Mr. Kilsheimer, to the best of your deponent's recollection, asked the leading question to the effect: 'Suppose we were to tell you that it has been testified before this Jury that at least on twenty occasions you ordered bids to be rigged, what would you say?' The Assistant U. S. Attorney further asked the question to the effect that your deponent had deposited in his bank account $4,000 more than he had earned, and asked your deponent to explain it." I think the quoted questions did not make it evident that Scully "was to be named" in an indictment. Consequently, Judge Goddard properly denied the motion without a hearing on evidence. On that account, I concur in the result.

3. As distinguished from a defendant under indictment, an ordinary witness, at a trial or before a grand jury, does not have the privilege of remaining completely silent but merely that of refusing to answer questions which might tend to incriminate him. Here we are deciding that there is no need to warn such a witness before a grand jury of his privilege. The Supreme Court has come very close to so holding. See Wilson v. United States, 162 U.S. 613, 623–624, 16 S.Ct. 895, 40 L.Ed. 1090; Powers

v. United States, 223 U.S. 303, 313–314, 32 S.Ct. 281, 56 L.Ed. 448.

It is not too difficult to justify that ruling when the prosecutor has no good reason to believe that an answer to a question will tend to incriminate. However, when, as in the instant case, a question is such that the prosecutor cannot help knowing that the answer will incriminate the witness, much can be said in favor of a warning-requirement. Particularly is that so when the witness is before a grand jury, for then he cannot have his counsel present to call his attention to his privilege. Accordingly, were the matter res nova, I would hold in the instant case that the failure to warn vitiates the indictment.

I would not feel constrained by this court's precedents on this subject.[4] For, in respect of criminal prosecutions, involving a man's liberty, stare decisis, when invoked by the government, should have far less significance than in civil suits. So the English judiciary holds. In Rex v. Taylor, [1950] 2 K.B. 368, the Court of Criminal Appeals overruled its own recent decision in Rex v. Turner, [1939] 1 All E.R. 330. The Court, after noting that the Court of Appeals in civil suits feels bound by its own earlier decisions as precedents in "order to preserve the rule of stare decisis," went on to say, "This court, however, has to deal with questions involving the liberty of the subject," and therefore felt free to overrule a bad precedent which favored the prosecution. Surely that should be the attitude of our courts which are much less bound by their own precedents than English courts have been traditionally. Stare decisis, when it really bites (i. e., when a court reluctantly follows a precedent it deems unwise) finds its basic justification in the policy of not upsetting settled doctrines, no matter how unjust, on which men have importantly relied in the con-

3. Dissenting opinion in United States ex rel. Accardi v. Shaughnessy, 2 Cir., 206 F.2d 897, 901, at page 904. The decision of the majority in that case was reversed in U. S. ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681.

4. See United States v. Block, 2 Cir., 88 F.2d 618, 620.

duct of their affairs.[4a] Stare decisis has no bite when it means merely that a court adheres to a precedent it considers correct. It becomes significant only when a court feels constrained to stick to a former ruling although the court has come to regard it as unwise or unjust. In such a case, since stare decisis then rests on a sort of estoppel, it should not lead to the perpetuation of injustice when the party who urges the court to abide by the precedent has actually not, before the suit began, changed his position in reliance on it.[5] Even, therefore, in civil cases, courts should heed Lord Wright's comment: "Great judges have said that the function of the common law was the perpetual quest for justice. I should be sorry if quest for certitude were substituted for quest of justice."[6] Especially should that comment guide a court in a criminal case when the government cites a precedent embodying an un-

just rule adverse to the accused. For the government is not in the position of a businessman who has purchased property, or incurred a business risk, in reliance on a judicial precedent.[7] Rather is the government like one who objects to a change in a substantive rule relative to negligence,[8] or a procedural rule of evidence or practice; as to such rules, stare decisis has relatively little vigor. Moreover, here we are considering the matter of constitutional interpretation where, usually, precedents have even less vitality.

But here, as I have said, we confront virtual rulings by the Supreme Court that a witness—if not at the time the target of a prospective criminal action—need not be warned. I think that, absent Supreme Court decisions indicating clearly a new doctrinal trend,[9] we must leave to that Court a departure from that rule.

4a. They rely on precedents less often than courts usually assume.

See Cardozo, Growth of The Law (1924) 122: "The picture of the bewildered litigant lured into a course of action by the false light of a decision, only to meet ruin when the light is extinguished and the decision is over-ruled, is for the most part a figment of excited brains. The only rules there is ever any thought of changing are those that are invoked by injustice after the event to shelter and intrench itself. In the rarest instances, if ever, would conduct have been different if the rule had been known and the change foreseen. At times the change means the imposition of a bill of costs that might otherwise have been saved. That is a cheap price to pay for the uprooting of an ancient wrong."

See also Gray, The Nature and Sources of Law (1921) page 295: "Practically, in its application to actual affairs, for most of the laity, the law, except for a few crude notions of the equity involved in some of its general principles, is all ex post facto. When a man marries, or enters into a partnership, or engages in any other transaction, he has the vaguest possible idea of the law governing the situation, and with our complicated system of jurisprudence, it is impossible it should be otherwise. If he delayed to make a contract or do an act until he understood exactly all the consequences it involved, the contract would never be made or the

act done. Now the law of which a man has no knowledge is the same to him as if it did not exist."

5. See Aero Spark Plug Co. v. B. G. Corp., 2 Cir., 130 F.2d 290, 298; Commissioner of Internal Revenue v. Hall's Estate, 2 Cir., 153 F.2d 172, 175; Frank, Courts on Trial (1949) 268–271.

6. Wright, The Law of "Invitation," 66 L.Q.Rev. (1950) 454, 456.

Seavey, Cogitations on Torts (1954) 68–69, says: "It is true that changes in rules are likely to lead to more litigation, since they produce a diminution of predictability, but the primary function of the law is of course justice; the likelihood of litigation alone should not prevent justice from being given."

7. See quotation from Cardozo, footnote 4a supra.

See also Seavey, Cogitations on Torts (1954) 67, 68–69, to the effect that, often, no "injustice" results but only the "loss of the expenses" of a trial.

8. See Seavey, Cogitations on Torts (1954) 67ff.

9. See Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208, 217–218; Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632, 636; Barnette v. West Virginia State Board of Education, D.C., 47 F.Supp. 251, 252–253; United States v. Ullman, 2 Cir., 221 F.2d 760, 762.

However, it is not amiss, I think, to suggest that, aside from constitutional doctrine, the Supreme Court may deem it well, as part of wise and just adminis-tration of the federal courts,[10] to hold that a federal prosecutor must warn a witness when a question plainly calls for an incriminating answer, especially if the interrogation occurs before a grand jury.

---

10. Cf. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 279.