STATE, Respondent, v. SMITH, Appellant.

(228 N. W. 240.)

(File No. 6722. Opinion filed December 17, 1929.)

See, also, — S. D. —, 228, N. W. 251.

*J. W. Jackson,* of Kennebec, for Appellant.

*M. Q. Sharpe,* Attorney General, and *R. F. Drewry,* Assistant Attorney General, for the State.

CAMPBELL, J. Defendant was convicted of the crime of grand larceny, and has appealed.

Appellant predicates error upon a separation of the jury after submission of the cause and before agreement. The case was submitted to the jury about noon on June 15th, and the verdict was returned into court on June 16th. The showing with reference to the matter of separation is by affidavits, and is substantially as follows:

One Dorman makes affidavit that about 6 o'clock in the evening of June 15th he, in company with defendant, was standing on a street corner in the town of Kennebec, where the cause was tried, and saw the jury coming down from the courthouse on the way to a restaurant for the evening meal; that affiant first observed that two men were walking together approximately 75 feet in the rear of the main body; that he then observed that there were only eleven jurors in the main group, and that the two men in the rear were the juror Schnoose and the sheriff of Lyman county, Morris by name; that at the Commercial State Bank corner the main body of jurors continued north along the street to a restaurant, and entered therein, but the juror Schnoose and the Sheriff Morris turned east at said corner, crossed the street, got into an automobile, and drove to and into the Snowe garage; that the juror Schnoose and the sheriff, as they walked along the street together in the rear of the other jurors, and as they walked over to the car, appeared to be in earnest conversation; that affiant watched the garage several minutes to see the sheriff and juror come out, but they did not, whereupon affiant, accompanied by defendant, walked down the street toward the garage, and, as he approached the door of the garage, could hear the sheriff and the juror Schnoose in earnest conversation, but could not distinguish what they said; that, after standing a moment at the door, affiant walked on into the garage, and, as he advanced from the door, saw Schnoose and Morris come out from behind some stored cars, leave the garage together, and proceed to the restaurant where the other jurors had previously entered. Affiant places the total elapsed time of these transactions at

from four to ten minutes. Affiant further states that the sheriff, Morris, was one of the chief witnesses for the state at the trial, and appeared to show much interest in securing the conviction of defendant, and that the said Schnoose and Morris, from their demeanor and tone of voice both on the street and in the garage, seemed to be earnestly debating some matter.

The affidavit of appellant, Smith, is to the same general substance and effect, except that he places the total elapsed time from the moment when he first observed the sheriff and the juror Schnoose separated from the other jurors and engaged in conversation until the moment when they re-entered the restaurant and rejoined the other jurors at from ten to fifteen minutes.

The affidavit of the sheriff, Morris, is to the effect that while he was a witness in the case as to some matters having to do with the repossession of the alleged stolen property which was for a time in his possession and custody, yet his only connection with the case was in his official capacity as sheriff; that at the time in question he was walking down the street behind the jury for the purpose of going to the restaurant and arranging for the meal for the jury, it being the custom in Lyman county for the sheriff to attend to such arrangements; that, as they were walking down the street, it started to rain, and one of the bailiffs requested affiant to go with the juror Schnoose to put his car, which was standing in the street, in a garage; that affiant crossed the street with Schnoose to a point where the car was standing, approximately 100 feet from the garage, and both got into the car, and Schnoose backed it out from the curb and drove it onto the floor of the garage; that thereupon affiant and Schnoose got out of the car, one from each side, and both immediately left the garage and went to the restaurant and rejoined the remainder of the jury. Affiant places the elapsed time at five minutes or thereabouts, denies that he was in earnest conversation with Schnoose back of any automobile in the garage or elsewhere, and denies any previous acquaintance with Schnoose. Affiant states that nothing whatever was said between himself and Schnoose regarding the case which the jury had under consideration, and that the only conversation was the passing of a remark about weather and crop conditions.

The juror Schnoose makes affidavit that on the way to supper, noticing that it was starting to rain, he asked one of the bail-

iffs if he could put his car in the garage; that the bailiff said he would ask the sheriff, who was walking down the street about ten feet back of the jury; that the bailiff dropped back and spoke to the sheriff, and then told affiant that he could put his car in, and that the sheriff would accompany him; that the jury continued on down the street, and affiant and sheriff crossed the street to the car; that both got in the car, and affiant drove the car down the street about 100 feet to the garage, and left the car on the floor in the front part of the garage; that affiant asked a garage attendant if he could leave the car there, and was told that he could, whereupon affiant and the sheriff immediately left and went to the restaurant where the other jurors were. Affiant says that he supposed the sheriff was as much in charge of the jury as the bailiffs were, and denies that there was any earnest or private conversation between himself and sheriff. Affiant states that there was no talk of any kind about the case, and that the incident had no influence whatever upon him as a juror. Affiant places the total elapsed time at from five to eight minutes.

It further appears from the record that the sheriff was not sworn as a bailiff, and was not in any manner in charge of the jury, which was in the custody of two bailiffs duly sworn for that purpose.

The weight of authority with reference to the effect of the unauthorized separation of a jury in a criminal case, other than misdemeanor, after submission and before agreement, is stated in a careful case note in 34 A. L. R. p. 1115, at page 1215, in the following language:

"In a prosecution for a felony, the courts, generally are agreed that where the jury has separated while deliberating on their verdict, under such circumstances as to make it reasonably appear that they might have been tampered with, prejudice is presumed, and the burden of showing that the defendant was not, in fact, prejudiced thereby, is on the prosecution. Unless the state shows noninjury to the defendant, a new trial will be ordered." The rule in this state was established by the case of State v. Church (1895) 7 S. D. 289, 64 N. W. 152, 153, as follows:

"We believe the true and only safe rule to be that, where the separation is such that one or more of the jurors might have been improperly influenced by others, and there is nothing reliable to

show that such influence has not been exercised to the prejudice of the accused, the verdict shall be vacated, and the case be retried."

We think the rule announced in State v. Church is not substantially different from the general rule as above set out. The importance of preserving the purity of jury trials and guarding them from all improper influence has been several times emphasized by this court. See Peterson v. Siglinger, 3 S. D. 255, 52 N. W. 1062; State v. Ferguson, 48 S. D. 346, 204 N. W. 652.

██ The sheriff in the instant case was one of the witnesses for the state. He was not a bailiff, and his official capacity as sheriff certainly gave him no right or authority to mingle in any fashion with the jurors or to have anything whatever to do with them. The separation of the jury is conceded, and that the juror Schnoose and the sheriff were together and apart from the other jurors for a period variously estimated as from four to fifteen minutes is not questioned. The impropriety of such conduct is beyond doubt. As to what took place between the sheriff and the juror during that interval there is a square conflict. If the affidavits of appellant and Dorman are to be believed, there arises a grave suspicion that the case was discussed by the sheriff and juror. Opposed to these affidavits are the affidavits of Schnoose and Morris. Certainly if this case had been discussed between them, both must have realized the utter wrongfulness of such conduct, and it may very well be that both would hesitate to admit it. This is not a case where we have the mere fact of separation under circumstances not suspicious coupled with an affirmative showing on the part of the persons involved that there was no tampering whatever with the juror. The showing of appellant which establishes the separation goes further, and makes allegations as to facts occurring during the separation which, if believed, are extremely suspicious. The only counter showing is by the parties directly involved. Under these circumstances, and in view of this direct conflict, can it be said in this case that the state has successfully met the burden of showing affirmatively that the defendant was not in fact prejudiced by the separation? Or, in the words of State v. Church, is it sufficiently and reliably shown by the state that an improper influence has not been exercised to the prejudice of appellant?

All things considered, we do not believe that the state has sufficiently met the burden resting upon it under the facts of this case,

and we think a new trial should have been granted because of the separation of the jury.

We have examined with care numerous other errors assigned by appellant. As set out above, the case must be reversed because of unlawful separation of the jury. Only two of the other errors assigned impress us as being so likely to arise upon new trial as to require attention in this opinion.

Appellant requested the following instruction, which the learned trial judge refused:

"The court instructs you, gentlemen of the jury, that if after consideration of the whole case, any juror entertains a reasonable doubt of the defendant's guilt, it is the duty of such juror so entertaining such doubt, not to vote for a verdict of 'guilty' or be influenced in so voting for the single reason that majority of jurors should be in favor of a verdict of guilty."

"This is the same instruction which this court held it was prejudicial error to refuse in the case of State v. Wilcox, 48 S. D. 289, 204 N. W. 369. As stated in the Wilcox Case, the purpose of this instruction is to impress upon each individual juror a sense of his own personal responsibility. Appellant predicates error on the refusal of this instruction. The court of its own motion, however, instructed the jury as follows:

"The court instructs you that if after a consideration of the whole case any juror entertains a reasonable doubt of the defendant's guilt, it is the duty of such juror so entertaining such doubt not to vote for a verdict of guilty or be influenced in so voting for the single reason that a majority of the jurors should be in favor of a verdict of guilty. This does not mean, however, that a juror should not fairly consider the views and arguments of his fellow jurors. The jury are sent out by the court to deliberate upon the evidence taken at the trial, and it is the duty of each juror during the entire time they are deliberating to honestly consider the views and arguments of his fellow jurors as to the evidence with a view of arriving at a true verdict."

It is to be observed that this is the identical request of appellant with an addition. This court did not hold, nor intend to hold, in the Wilcox Case, that the exact words of the instruction there referred to, refusal of which was held error, must be given in every case without change or amendment. It is the rule in this

jurisdiction that it does not constitute prejudicial error to refuse a requested instruction, if the substance of the law embraced in the request is fully and fairly covered by the court elsewhere in the instructions. State v. Magnuson, 48 S. D. 112, 202 N. W. 638. There is no magic in the particular word form approved in the Wilcox Case. In the Wilcox Case the court did not elsewhere in its instructions cover the substance of the request, and the refusal of the request was properly held prejudicial error. That is not true here. It is enough if the individual responsibility of each juror is sufficiently plain from the charge as a whole. State v. Keeble, 49 S. D. 456, 207 N. W. 456; State v. Phelps, 5 S. D. 480, 59 N. W. 471. We think the instruction given by the court in the instant case was a better and more nearly complete statement of the law relating to the point involved than was the instruction in the Wilcox Case. There is no error in the instruction as given by the court, and, in view of that instruction, there is no error in the refusal of appellant's request.

Appellant also predicates error upon the fact that prior to his arrest in the instant case he was subpoenaed and required to testify under section 4504, Rev. Code 1919, before a magistrate , who was investigating the larceny in question, at which time he was not advised of his constitutional privilege against self-crimination. This is not a case where the testimony thus given by appellant in the investigation was sought to be used against him at the trial (as was done in State v. Hoffman, 53 S. D. 182, 220 N. W. 615), but appellant claims that his constitutional rights were invaded by the very fact of his being called and compelled to testify at the investigation without being first advised of his constitutional right.

The privilege against self-crimination is so inherent and fundamental in our law that little discussion of it can be needful at this time. The origin, development, and history of the privilege is set forth in masterly fashion in Wigmore on Evidence (2d Ed.) §§ 2250-2252. Coming to us as a fixed concept of the common law, it is embedded in the Federal Constitution (Fifth Amendment) and in the Constitutions of all of the states excepting two. Our own constitutional provision is found in section 9 of article 6, and reads: "No person shall be compelled in any criminal case to give evidence against himself. * * *"

It seems universally agreed that the particular consti-

tutional phrasing should neither enlarge nor narrow the scope of the privilege as accepted, understood, and judicially developed at the common law (Wigmore on Evidence [2d Ed.] § 2252), and that the exemption protects witnesses as well as parties in all manner of proceedings (Wigmore on Evidence [2d Ed.] § 2252). The existence of this privilege is one of the outstanding and distinctive features of the common-law system of jurisprudence:

"But a far more important requirement is that the proceeding to establish guilt shall not be inquisitorial. A peculiar excellence of the common law system of trial over that which has prevailed in other civilized countries, consists in the fact that the accused is never compelled to give evidence against himself." 1 Cooley Constitutional Limitations (8th Ed.) p. 645.

The importance of the preservation of this privilege has been stated and restated by the courts times without number. In a comparatively recent case, speaking of the Fourth and Fifth Amendments to the Federal Constitution, the Supreme Court of the United States, speaking by Mr. Justice Clarke, said:

"The part of the Fifth Amendment here involved reads: 'No person * * * shall be compelled in any criminal case to be a witness against himself.'

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, in Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or

'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers.

"In the spirit of these decisions we must deal with the questions before us." Gouled v. United States (1921) 255 U. S. 298, 41 S. Ct. 261, 263, 65 L. Ed. 647.

■ ■ This constitutional privilege is an immunity personal to the one entitled to claim it, and which may be waived by him, but by the very great weight of authority there is a marked distinction with reference to the application of the constitutional privilege in the case of a witness properly so called and in the case of a party, that is, the person whose guilt or innocence in relation to a specific offense is actually being investigated in the particular pending proceeding. As to a witness, he may always be subpœnaed, sworn, and interrogated. It is the weight of authority that he need not be advised of his privilege in advance of interrogation, but will be assumed to know of the existence thereof, and, if he desires to claim the privilege as to any particular question asked of him, he must assert it; failing so to do, he will be deemed to have waived it. See Wigmore on Evidence (2d Ed.) § 2268-9. In this state the witness must claim the privilege, and whether the witness should be advised in advance of the existence of the privilege is largely discretionary.

"Whenever the testimony sought to be elicited may tend to subject a witness to criminal liability, he has the constitutional right to refuse to answer upon that ground, and, though the privilege is purely personal, it may well be suggested to the witness by the court whenever the demands of public justice require the exercise of such discretion." State v. Mungeon, 20 S. D. 612, 108 N. W. 552, 553.

With reference to parties, however, the situation is very lifferent.

"For the party-defendant in a criminal case, the privilege permits him to refuse answering any question whatever in the cause, on the general principle that it 'tends to criminate' (ante, § 2260), This being so, the prosecution could nevertheless on principle have a right at least to call him to be sworn, because, as with an ordinary witness, it could not be known beforehand whether he would exercise his privilege. But no Court seems ever to have sanctioned

this application of the principle." Wigmore on Evidence, (2d Ed.) § 2268.

"The first class includes the case of an accused in a criminal case, where the privilege exempts him from all answers whatsoever." Wigmore on Evidence (2d Ed.) § 2260.

"No case is cited where the prosecution called the defendant as a witness in a strictly criminal case. We would not expect one. Such a course would be clearly wrong." Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127. See, also, In the Matter of Greene, 86 Mo. App. 216; Town Council v. Owens, 61 S. C. 22, 39 S. E. 184; People v. Ferola, 215 N. Y. 285, 109 N. E. 500; Ex parte Sauls, 46 Tex. Cr. R. 209, 78 S. W. 1073.

. Our own statute has likewise recognized this distinction. Section 4879, Rev. Code 1919 (amended by chapter 93, Laws 1927, without change in this particular), provides:

"Defendant May Be Competent Witness. In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of any crime, before any court or committing magistrate, the person charged shall, at his own request, but not otherwise, be a competent witness. * * *"

And section 4412, Rev. Code 1919, by its phrasing, goes beyond the constitutional prohibition against being compelled "to give evidence against himself," and provides:

"No person can be compelled in a criminal action to be a witness against himself."

The situation may fairly be summarized, we think, in the language of the New York court in People v. Bermel, 71 Misc. Rep. 356, 128 N. Y. S. 524, 525, 26 N. Y. Cr. 47, as follows:

"* * * If the person testifying is a mere witness, he must claim his privilege on the ground that his answers will incriminate him, whereas, if he be in fact the party proceeded against, he can not be subpœnaed and sworn, even though he claim no privilege."

We turn now to a consideration of section 4504, Rev. Code 1919. This section originated as chapter 200, Laws 1907, and investigations conducted thereunder are commonly referred to in this state as "John Doe proceedings" by reason of the fact that the complaint which is laid before the magistrate to initiate the proceeding customarily alleges the commission of a criminal offense by the ubiquitous John Doe. The section (which constitutes the

whole of article 6 of chapter 4 of part 2 of the Code of Criminal Procedure 1919 entitled "Investigation in Aid of Prosecution") reads as follows:

"*Power to Subpoena and Examine Witnesses.* Whenever a complaint verified positively, or upon information and belief, is laid before any magistrate that a criminal offense has been committed in this state and asking for an investigation of the same, such magistrate shall issue his subpœna requiring any person he may deem proper to attend before him at the time and place mentioned in such subpœna and submit to an examination and give testimony concerning any violation of law about which he may be questioned. The testimony of such witness shall be reduced to writing by the meagistrate or some person under his direction, and shall be signed and sworn to by the witness, and if the offense complained of appears to have been committed a warrant for the arrest of the offender shall be issued and further proceedings shall then be had as provided by law. No witness shall refuse to comply with such subpœna because his fee therefor has not been paid in advance and his attendance may be compelled by attachment as in the case of other witnesses."

This statute appears to contemplate an investigation in advance of arrest when desired. Sections 4525 and 4528, Rev. Code 1919, read respectively as follows:

"4525. *Defined.* A preliminary information is a verified statement in writing, presented to a magistrate, charging one or more persons with the commission of a designated public offense."

"4528. *Magistrate to Issue Warrant.* When a preliminary information, verified by oath or affirmation, is laid before a magistrate, of the commission of a public offense, he must if satisfied therefrom that the offense charged has been committed, and that there is reasonable ground to believe that the defendant has committed it, issue a warrant of arrest."

Our Code further provides that, when a defendant is brought before a magistrate upon an arrest, either with or without a warrant, on a charge of having committed a public offense, the magistrate must immediately inform the person so arrested of the charge against him, and of his right to the aid of counsel in every stage of the proceedings, and also of his right to waive an examination before any further proceedings are had, and must

allow a reasonable time to procure counsel, whereupon, unless the examination is waived, the magistrate must proceed to examine the case, and, after hearing the evidence and the statement of defendant, if he has made one, if it appears that a public offense has not been committed or there is no sufficient cause to believe the defendant guilty thereof, the magistrate must order the defendant discharged. If it appears that a public offense has been committed, and that there is sufficient cause to believe the defendant guilty thereof, the magistrate must order the defendant held to answer. Sections 4568 to 4582, Rev. Code 1919.

Section 4504 would seem to permit the laying of a complaint before a magistrate verified upon information and belief, as well as positively, as required by section 4528, and would also appear to authorize an investigation where no defendant is named; the complaint being merely that a criminal offense has been committed. It would likewise appear to provide a further means, in addition to the mere allegations of a positively verified complaint, for the magistrate to satisfy himself, if so requested, before issuing a warrant of arrest, that the offense charged has been committed, and that there is reasonable ground to believe that it has been committed by the person for whom the warrant of arrest issues. But it is axiomatic that no statute can lawfully be availed of for the purpose of depriving a person charged with crime of his constitutional rights. Our law does not favor proceeding against a known defendant under a fictitious name.

Section 4719, Rev. Code 1919, provides:

"*Fictitious Name.* When a defendant is prosecuted by a fictitious or erroneous name, and in any stage of the proceedings his true name is discovered, it must be inserted in the subsequent proceedings, referring to the fact of his being prosecuted by the name mentioned in the indictment, information or complaint."

 It is entirely clear under the Constitution and statutes of this state that any person charged with crime in any proceeding against him before any court or committing magistrate shall be a competent witness "at his own request but not otherwise." Section 4879, Rev. Code 1919. This amounts to nothing more nor less than a statutory interpretation and reiteration of the constitutional immunity. The constitutional rights of a person accused of crime depend upon fact and substance, not form. If a complaint were

filed before a magistrate charging John Smith with the commission of larceny, no one would maintain that John Smith could be called by the state to testify regarding the matter either at a preliminary examination after arrest under sections 4568-4582, Rev Code 1919, or at a preliminary judicial investigation prior to the issuance of the warrant of arrest under section 4504. His constitutional immunity depends upon the fact that his guilt or innocence of a given offense is the direct and primary subject of the judicial inquiry. It would seem almost too clear for argument that, when a complainant informs a prosecuting officer that his horse has been stolen, and he thinks John Smith stole it, any judicial inquiry into the truth of that complaint, whether before or after the issuance of a warrant of arrest, is a judicial inquiry into the guilt or innocence of John Smith as to the offense of larceny. The constitutional rights of John Smith cannot be nullified nor can he be magically translated from the status of a party whose conduct is the main subject of the judicial inquiry to the status of a mere witness by the convenient device, under the supposed circumstances, of laying the complaint before the magistrate in the name of John Doe instead of the name of the party actually suspected. It would hardly be supposed that such a course could ever have been believed legitimate, and yet in the first proceeding in which section 4504 appeared in any manner before this court, that seems to have been the case. The proceeding referred to was civil in its nature (Re Johnson, 27 S. D. 386, 131 N. W. 453, 456), but in the course thereof the following testimony was given:

" * * * One Henry Ringer came to my office and complained to me, as state's attorney, that he thought a crime had been committed by J. M. Prostrollo, * * * I told him it was my custom in every criminal case, since the passage of chapter 200 of the Laws of 1907, [now section 4504, Rev. Code 1919] to conduct an investigation under that statute, and I have conducted such investigation, I think without exception, in every case that has been brought before me—every criminal case, that those cases were entitled, 'The State of South Dakota v. John Doe,' that no defendant might be apprised of the nature of any charge against him; * * * it was necessary for me to make the affidavit for this investigation * * * I made such affidavit * * * and had a subpœna issued, subpœnaing Prostrollo. to appear before the justice of the peace. * * * When

Mr. Prostrollo was brought before me, I took the testimony by questions and answers. * * * "

It also appeared that Prostrollo was the only witness examined upon the charge thus made against John Doe. In the Johnson Case the rightfulness of the John Doe proceeding was not in any wise directly involved, but the court commented on the situation indicated by the foregoing facts as follows:

"Nor should we be understood as expressing any opinion regarding the proper interpretation of chapter 200, Laws 1907. The language of that act is broad and comprehensive. Independently of constitutional limitations, it would seem to justify the practice pursued by the accused and which counsel assert is the practice which has been generally followed since this statute was enacted. Manifestly, a proper interpretation of such a statute would require consideration of sacred constitutional rights which should not be defined in this proceeding. However interpreted, this act materially changes long established methods of procedure in this jurisdiction.

"Certainly it was not intended to be employed for the purpose of procuring evidence for use in civil causes. When invoked for a proper purpose, the practice under it must be governed by fundamental principles. Clearly, the interpretation given it by the accused, and the practice said to be generally followed, would in a proper case give rise to serious and doubtful questions of constitutional law—questions which should receive the thoughtful attention of state's attorneys and all members of the bar."

That the use made of section 4504 was a flagrant invasion of the constitutional rights of the man Prostrollo, who was in fact complained against, but was sought to be treated, not as a party, but merely as a witness by the John Doe fiction, is perfectly apparent. This court substantially so indicated by its comment last above quoted. The constitutionality of the statute was brought before the court in State v. Daniels, 38 S. D. 81, 160 N. W. 723, and in refusing to hold the statute invalid this court used the following extremely cautious language:

"While it is true that the provisions of this law might be abused, and, under color of the same, some person might be deprived of some constitutional right, yet a proceeding thereunder, *if properly conducted*, would not conflict with or impair the constitutional rights of any person."

In that holding we entirely concur, but we are equally of the opinion that it is an abuse of the statute, and not proper conduct of a proceeding thereunder, to endeavor to use it, as recited in the Johnson Case, as a means for examining, as a witness, the party whose guilt or innocence is in truth and in fact the actual subject-matter of the investigation.

The danger of impairment of constitutional rights by such abuse of the statute has been clearly pointed out by the Attorney General of this state, when in an opinion under date of January 26, 1926 (Report of Attorney General S. D. 1926, p. 146 et seq.), he wrote as follows:

"The practice of instituting investigations under Section 4504 of the 1919 Revised Code and subpœnaing persons who are suspected of being implicated in the commission of an offense under investigation is one fraught with considerable danger. This investigation is one judicial in character and to my mind is on a par with a grand jury proceeding and the immunities and privileges of such witnesses are the same as result from a grand jury investigation.

Section 9, article 6 of the Constitution of this state provides that 'No person shall be compelled in any criminal case to give evidence against himself,' etc. The term 'in any criminal case' has generally received a liberal interpretation and it has been said that 'The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime.' Counselman v. Hitchcock, 142 U. S. 547 [12 S. Ct. 195, 198], 35 L. Ed. 1110; Taylor v. Forbes, 143 N. Y. 219 [38 N. E. 303]; Ex parte Senior [37 Fla. 1, 19 So. 652], 32 L. R. A. 133.

"It has also been said that:

" 'If in fact the defendant was compelled to be a witness against himself before the grand jury it was in violation of his personal right guaranteed to him by the constitution of the state which provides that no person in a criminal case shall be compelled to be a witness against himself. If such were the case, it was the imperative duty of the court to grant his motion to quash the indictment, for courts have no discretion in the matter of giving effect to constitutional guarantees.' State v. Froiseth, 16 Minn. 296 [Gil. 260]; Boyd v. U. S., 116 U. S. 616 [65 S. Ct. 524] 29

L. Ed. 746; Counselman v. Hitchcock, supra; U. S. v. Edgerton [D. C.] 80 F. 374.

"In the case of State v. Gardner [88 Minn. 130], 92 N. W. 529, the court said:

" 'The constitutional guaranty is not that no person shall be compelled to give evidence against himself which is made the basis of an indictment against him, but it is that he shall not be compelled to be a witness against himself. This constitutional guaranty must receive a liberal construction to the end that personal rights may be protected. It is not necessary for the defendant to show that he had been in fact injured, for, as was well said by the court in the case of U. S. v. Edgerton, supra: 'Where a witness is compelled to testify against himself the injury inheres in the violence done to his rights. It is not susceptible of proof, nor the policy of the law to require it; and the injury done to the public in such case outweighs that suffered by the defendant. It is a matter of the highest public policy that crime shall be punished by legal methods.' 'Better a casual miscarriage of justice than that the constitutional rights of the meanest man should be disregarded. The constitutional guaranty not only protects a person from being compelled to give direct evidence tending to establish his guilt, but also from giving any circumstances or link in the chain of evidence which may tend to convict him of crime. It is a reasonable construction to hold that it protects a person from being compelled to disclose the circumstances of his crime, the sources from which or the means by which evidence of its commission, or of his connection with it may be obtained, or made effectual for his conviction, without using his answer as direct admissions against him. For all practical purposes such disclosure would have the effect to furnish evidence against the party making them. They may furnish the only means of discovering the names of those who could give evidence concerning the transaction and the instrument by which the crime was perpetrated, or even the corpus delicti itself.'

"I believe that our court had in mind a possibility such as the one in question in the case of State v. Daniels [38 S. D. 81] 160 N. W. p. 723, when Judge Whiting spoke of a proceeding instituted under section 4504 of the 1919 Revised Code, and said:

" 'While it is true that the provisions of this law might be abused, and, under color of the same, some person might be de-

prived of some constitutional right, yet a proceeding thereunder if properly conducted would not conflict with or impair the constitutional rights of any person.'

"There is some doubt in my mind whether a person could be prosecuted at all who has been compelled by a subpœna to appear before a magistrate and who has been compelled to give testimony relative to the circumstances of the commission of a crime of which he himself is being suspected regardless of whether such witness has been warned or not. This question has never been passed upon by our supreme court."

 We do not mean to be understood as saying that a proper and legitimate use of section 4504 can in no case be made. It can properly be employed if an effort is being made in good faith to determine whether or not a crime has been committed, and, if so, by whom. For example, if a prosecuting attorney or a magistrate is advised that an automobile has been stolen, and the owner has no idea by whom it was taken, it may be perfectly proper under those circumstances to file a complaint against John Doe, alleging the larceny and requesting an investigation, and proceed to conduct an investigation under section 4504. And, if as a result of such investigation it appears that the largceny was committed, and that there is reasonable ground to believe it was committed by William Smith, a warrant may issue for his arrest, and a subsequent indictment or information against him would not be vitiated by the fact, if it so happened, that he was called and testified as a witness in the John Doe proceeding without having been advised of his constitutional right, providing at the time he was so called he was not under suspicion of the larceny in such fashion that it should be said as a matter of fact that the investigation was then primarily upon the question of his guilt or innocence. And, if the prosecuting attorney or a magistrate is informed that a larceny has been committed, and that it is believed to have been committed by William Smith, we see no reason why a complaint could not be filed upon information and belief against the said William Smith and an investigation requested, and before the issuance of a warrant for his arrest an investigation conducted under section 4504; but in that case William Smith should not be called to testify as a witness in the course of the investigation. And the constitutional right of William Smith under those circumstances not to be sub-

jected to inquisition in that proceeding cannot be minimized or nullified by filing the complaint or entitling the proceeding "State of South Dakota v. John Doe." If during that investigation, whether entitled against Smith or Doe, William Smith is subpœnaed and required to testify, we think it is such invasion of his constitutional rights that a subsequent indictment or information must be quashed. It is not sufficient answer to say that the testimony given by him at the investigation was not offered in evidence against him at the trial. It is the contemplation of our law that the party whose guilt or innocence is in truth and in fact the primary and actual subject of the judicial investigation shall not be summoned before the investigating magistrate or tribunal and subjected to inquiry in any manner regarding the offense. In Boone v. People, 148 Ill. 440, 36 N. E. 99, 101, where the defendant was taken from jail and examined as a witness before the grand jury, which subsequently indicted him, and was compelled to testify before them regarding his guilt or innocence, the court held that the indictment should have been quashed, and said:

"By section 10 of article 2 of the constitution of the state of Illinois it is declared: 'No person shall be compelled in any criminal case to give evidence against himself.' When the disqualification of a defendant in a criminal case, as a witness in his own case, was removed by section 486 of the Criminal Code of Illinois, it was expressly provided 'that a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect.' The provision of the statute and the positive inhibition of the constitution alike preclude the right of the grand jury or any court to call upon the defendant, and, in the first place to make him a witness, and require him to give evidence against himself. It is of the highest degree of interest, and most important to preserve that peculiar excellence of the common-law system which has never allowed a proceeding to establish guilt to be inquisitorial."

In U. S. v. Edgerton (D. C.) 80 F. 374, 375, the court said:

"It is fatal to the indictments that the defendant was called to testify in the particular matter from which they resulted, without being informed or knowing that his own conduct was the subject

under investigation. In the case of U. S. v. Brown, 1 Sawy. 531, Fed. Cas. No. 14,671, it is held that there is no such thing as a criminal action or proceeding, within the meaning of the Oregon statutes, which protect a defendant in a criminal case from testifying against himself, until an indictment has been filed in court, and that the examination of a person before the grand jury, although such an examination tends to connect him with a criminal offense, is not the invetsigation of a 'criminal charge.' But the Supreme Court of the United States, in Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195 [35 L. Ed 1110], holds otherwise. There it is held that under the fifth amendment to the constitution of the United States, which declares that no person shall be compelled in any criminal case to be a witness against himself, an examination of a person before the grand jury in an investigation into certain alleged violations of the interstate commerce act, where his testimony might tend to criminate him, constitutes a 'criminal case,' within the meaning of the constitutional provision. The adjudged cases in both the federal and state courts are fully reviewed in the opinion. It makes no difference, in my judgment, that the case was one where the witness declined to answer, and the question decided was raised on habeas corpus proceedings to release him from imprisonment for contempt in such refusal. The court holds, upon obvious principles, that the constitutional provision referred to, as well as the like provisions adopted by the various states, must have a liberal construction for the protection of personal rights. Neither evasion nor subterfuge can be permitted to destroy them.

"It is argued that it must be made to appear that the defendant has suffered injury in what has been done, before the objection that is made can be sustained. This is true as to technical requirements and formalities, but not as to matters of substance. Where a witness is compelled to testify against himself, the injury inheres in the violence done to his rights. It is not susceptible of proof, nor the policy of the law to require it, and the injury done to the public in such case outweighs that suffered by the defendant. It is a matter of the highest public policy that crime shall be punished by legal methods. When these are disregarded, there is the mob, between which, in the pursuit of vengeance, and the officers of the law, acting in its name, but in disregard of it, there is no distinction."

See, also, State v. Gardner, 88 Minn. 130, 92 N. W. 529; State v. Meyer, 181 Iowa, 440, 164 N. W. 794; Tuttle v. People, 33 Colo. 243, 79 P. 1035, 70 L. R. A. 33, 3 Ann. Cas. 513; In the Matter of Green, 86 Mo. App. 216; People v. Mondon, 103 N. Y. 211, 8 N. E. 496, 57 Am. Rep. 709; People v. Knott, 204 App. Div. 379, 198 N. Y. S. 142.

The distinction is simple of statement, and will not, we think, be difficult of application. A fair interpretation of the constitutional provision and the common-law privilege upon which it is based requires the holding that a person may not be subjected to inquisition or called as a witness by the state in any judicial inquiry which has for its primary object the determination of that person's guilt or innocence of a given offense. In such investigation that person is, in actual fact, a party as distinguished from a witness, and his constitutional rights must be determined according to the fact regardless of the form of the proceeding. The distinction is well pointed out in People v. Bermel, 71 Misc. Rep. 356, 128 N. Y. S. 524, 525, 26 N. Y. Cr. 47, in the following language:

"The general rule applicable to the examination of defendants before the grand jury is this: If there is being conducted a general investigation into affairs and conditions private or public, not aimed at any particular individual or individuals, and witnesses are subpœnaed and sworn before the grand jury making this investigation, a witness may claim the privilege of refusing to answer any question which might tend to incriminate him, and he cannot be compelled to answer. He cannot be compelled to be a witness against himself as to the commission of a crime before any investigation or hearing recognized by law. The Constitution of this state provides that:

" 'No person shall be held to answer for a capital or otherwise infamous crime * * * unless on the presentment or indictment of a grand jury, * * * nor shall he be compelled in any criminal case to be a witness against himself.' Article 1, § 6.

"If the witness upon such general investigation not aimed at him, fails to claim this privilege or constitutional right, his testimony may be used against him, or even be the basis of an indictment. But where, on the other hand, the investigation before the grand jury is a proceeding against him, or, being ostensibly a

general investigation, is, in fact, as shown by the circumstances and evidence, a proceeding against him, then the defendant's constitutional right is violated if he be subpœnaed before the grand jury, sworn and questioned, though he makes no claim of privilege or exemption. Briefly stated, if the person testifying is a mere witness, he must claim his privilege on the ground that his answers will incriminate him, whereas, if he be in fact the party proceeded against, he cannot be subpœnaed and sworn, even though he claim no privilege. People v. Gillette, 126 App. Div. 665, 111 N. Y. S. 133; People ex rel. Hummel v. Davy, 105 App. Div. 598, 94 N. Y. S. 1037; Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110; People v. Singer, 18 Abb. N. C. [N. Y.] 96; People v. Haines [Gen. Sess.] 1 N. Y. S. 55; State v. Froiseth, 16 Minn. 296 (Gil. 260); State v. Gardner, 88 Minn. 130, 92 N. W. 529. The party testifying may, in fact, be the defendant or the party proceeded against, and not a mere witness, although he be not under arrest or openly charged with the crime or proceeded against in name. The title of the proceeding cannot determine rights, as constitutional protection is one of substance and not of form. If the person examined before the grand jury be in fact the one aimed at, sought for, and charged with the crime, the title of the proceeding cannot make his examination legal."

▮▮▮▮ Applying these principles to the instant case, we do not think it sufficiently appears that the John Doe proceeding, wherein defendant was subpœnaed, was in fact at the time he was called an inquiry into his guilt or innocence. Every presumption should be indulged in favor of the view that a legitimate use was being made of the statute by the magistrate and prosecuting officers, rather than an illegitimate use; and the burden is on a defendant raising the constitutional question with reference to his having been subpœnaed and examined as a witness in a John Doe proceeding to show affirmatively that such proceeding at the time he was called, regardless of its form, was in truth and in fact an investigation of his guilt or innocence. In the instant case it is not made to appear that at the time the defendant was called in the John Doe proceeding he was suspected of the offense in question, or that complaint, formal or informal, had been made by any one to the magistrate or the prosecuting attorney to the effect that the larceny in question had been committed by this defendant.

Further, defendant sought to raise the question in this case by making a motion that he be furnished with a transcript of the testimony given by other witnesses in the John Doe proceeding for the purpose of ascertaining whether any information secured from them had been so secured by virtue of information previously secured from this defendant upon his examination. We do not think the question can be raised in that way. If testimony given by a defendant in a John Doe investigation is offered against him at the trial, he may, by proper objection to the introduction thereof, raise the question of whether or not the particular testimony offered was obtained in violation of his constitutional rights. But, if a defendant in a criminal case seeks to raise, as does the defendant here, the general proposition that his constitutional rights were invaded by the very fact that he was subpœnaed and required to testify in a John Doe proceeding, whether such testimony is offered against him at his subsequent trial or not, we think he can only do so by proper motion to quash the indictment or information on that ground. Failing to make a motion to quash, he waives that general constitutional question, though he may still raise the constitutional question as to the admissibility of such testimony against him, if it is offered during the trial.

This, we think, disposes of all errors assigned which are likely to arise again upon a retrial. The judgment and order appealed from are reversed.

SHERWOOD, P. J., and POLLEY, BURCH, and BROWN, JJ., concur.