STATE of South Dakota, Plaintiff and Appellee,

v.

Gary McCOMSEY, Defendant and Appellant.

No. 13643.

Supreme Court of South Dakota.

Considered on Briefs April 29, 1982.

Decided Sept. 1, 1982.

Rehearing Denied Oct. 7, 1982.

---

Grant E. Gormley, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Drew C. Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and appellant.

FOSHEIM, Justice.

A jury convicted the defendant of eluding a police vehicle, in violation of SDCL 32–33–18.[1] This appeal is from the judgment. We affirm.

The prime question is whether it was prejudicial error for the trial judge to release the jurors overnight without supervision after the case had been submitted to them for deliberation. The case went to the jury at approximately 4:45 p. m., November 23, 1981; the jurors left for supper

under supervision of a bailiff at approximately 7:15 p. m. and returned about 8:00 p. m.; and at 9:25 p. m. the jury reported they were deadlocked after which the court directed them to re-read Instruction No. 23. At 12:35 a. m., November 24, 1981, the court, on its own motion and without prior discussion with counsel, stated to the assembled jury:

> Very well, and it is about twenty minutes to 1:00 in the morning and obviously, the Jury has not yet reached a verdict on the matter. What I am going to do, Ladies and Gentlemen, is we are all going to go home and go to bed. And I would like to have you all come back at 10:00 o'clock tomorrow morning and continue your deliberations at that time in an effort to reach a verdict in the matter.

That statement was followed by the usual admonition not to discuss the case with anyone. There was, however, no supervision of the individual jurors by an officer of the court after they separated and returned to their homes. After the jury was released, the defendant's attorney promptly stated his objections to this procedure. The court appeared to believe that SDCL 23A–25–5 allowed it, in its discretion, to release the jurors overnight without supervision. The statute is clear, however, that if the court allows the jurors to separate overnight, the jurors must be under the supervision of an officer.

SDCL 23A–25–5 reads as follows:[2]

> Before the jurors retire for deliberation, one or more officers must be sworn to keep them together in some private and convenient place, with such suitable food and drink as the court shall direct. The court may, in its discretion, permit the jurors to separate during the adjournment of court overnight, under supervi-

1. SDCL 32–33–18 reads: Any driver of a motor vehicle who intentionally fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor as provided by § 32–33–19. The signal given by the police officer may be by

hand, voice, emergency light or siren. The officer giving such signal shall be in uniform, prominently displaying his badge of office, and his vehicle shall be appropriately marked showing it to be an official police vehicle.

2. See SDCL 15–14–19 concerning retirement of a jury for deliberation in a civil case.

sion of the officer or officers. The officers shall not permit any person (including themselves) to communicate with the jurors or to ask whether they have agreed upon a verdict except by order of court. The officers shall return the jurors into court when they have agreed upon a verdict.

That statute in substantially its present form predates statehood. CL 1887, §§ 7406 and 7410. The specific reference to overnight separation first appears as an amendment in Chapter 130 of the 1955 Session Laws.[3] When jurors have retired for deliberation and then have separated without supervision, *State v. Church*, 7 S.D. 289, 64 N.W. 152 (1895), established the test used to decide if a retrial is necessary.

> [W]e know of no statutory provision which authorizes a court to permit a jury to which a criminal cause has been finally submitted to separate, after they have retired for deliberation to the seclusion of a jury room.... We believe the true and only safe rule to be that, where the separation is such that one or more of the jurors might have been improperly influenced by others, and there is nothing reliable to show that such influence has not been exercised to the prejudice of the accused, the verdict should be vacated, and the case be retried.

*Id.* 64 N.W. at 153. The *Church* proposition was further developed in *Edward Thompson Co. v. Gunderson*, 10 S.D. 42, 71 N.W. 764 (1897), with this language:

> Although the testimony of jurors will not be received to impeach their verdict, it does not follow that such testimony will

not be received to sustain it when assailed. If the jurors are accused of misconduct, they may always show, by their oaths, not only in their own vindication, but, in furtherance of justice, that they were not guilty of the misconduct charged against them.... The only reason for not allowing jurors to separate after a cause has been submitted is to prevent them from being improperly influenced by others; and when, as in this case, it affirmatively appears that during a temporary separation for an innocent purpose the juror has not conversed or held communication with any one on any subject, and could not have been influenced in any manner whatever, the irregularity, if any, should be regarded as not affecting any substantial right, and a new trial should not be granted. Nothing herein conflicts with what is decided in *State v. Church* (S.D.) 64 N.W. 152.... An examination of the entire [*Church*] opinion will disclose that it is authority for the foregoing rule, and nothing more. The doctrine therein declared is to this effect: Where the separation is such that one or more of the jurors might have been improperly influenced by others, the irregularity must be regarded as presumptively prejudicial, and the burden is cast upon the party seeking to sustain the verdict to show that such influence has not been exercised to the prejudice of the other party.

*Id.* 71 N.W. at 764–765. *Accord, State v. Smith*, 56 S.D. 238, 228 N.W. 240 (1929); *State v. McCoil*, 63 S.D. 649, 263 N.W. 157 (1935).

---

**3.** The important word in this sentence is *specific*. Although no statute expressly gave the court authority to allow a jury to separate overnight before 1955, this authority was implicitly given in our 1887 code.

> CL § 1887, § 7406 states: After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, without food or drink, except bread and water, unless otherwise ordered by the court, and not to permit any person to speak to or communicate with them, nor do so themselves, unless

it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court. CL 1887, § 7410 states: While the jury are kept together, either during the progress of the trial or after their retirement for deliberation, they must be provided by the sheriff, upon the order of the court, at the expense of the county, with suitable and sufficient food and lodging.

It is clear that the 1955 session law did not change anything, and therefore the pre-1955 case law supporting our holding on this issue is still good.

In *State v. Steensland*, 56 S.D. 534, 229 N.W. 395 (1930), three jurors were separately brought to the sheriff's office and permitted to inform their respective families by telephone that on account of being on the jury they would be unable to go home. It was shown by affidavits of the jurors that they did not talk about the case. We held that, while this procedure was improper, the showing disspelled any prejudice to the defendant.

On the morning following the overnight separation the court, with counsel participating, conducted an examination under oath of each juror. Based on the jurors' testimony, the court concluded that the jurors had obeyed its admonition not to discuss the case with anyone and that no prejudice resulted to either party by virtue of the jurors' separation without supervision.

█ It is apparent that the separation provided circumstances which make it reasonably appear the jury might have been improperly influenced by others and the irregularity must therefore be regarded as presumptively prejudicial. We further conclude, however, that the burden of showing that no such influence has been exercised to the prejudice of the defendant has been sustained.

Appellant also claims the state's attorney made prejudicial statements during closing argument. During the voir dire, defendant's counsel asked the jurors to agree with the proposition that jurors are not to infer anything from defendant's failure to take the witness stand.

The court instructed the jury:

In this case the law raises no presumption against the defendant, but every presumption of the law is in favor of his innocence. He is not required to prove himself innocent, or put in any evidence at all upon that subject. The fact that the defendant has not testified in this case raises no presumption again him, and you must give no thought to the fact that the defendant did not testify in his own behalf in this case in arriving at your verdict.

In closing argument, defense counsel stated:

Finally, the one I asked you to agree with in my voir dire is the right of the Defendant, and again any Defendant has, not to take the stand. There can be no inference drawn from the fact that he does not. That has no weight whatsoever in your deliberations. So completely disregard that fact in discussing this case in the Jury room.

The state's attorney then addressed the jury as follows:

Now there has been much said about the Defendant taking the stand. That is an inviolate rule that comments should not be made upon the fact that the Defendant has not taken the stand. But as you recall, that subject has always been raised by the Defendant, not by the State. You didn't hear me talk about that until the Defendant has brought that up. True, no verdict of guilty should be brought in because the Defendant did not take the stand. That's true. But having said that, someone was driving that pickup on the night in question. Now—MR. JOHNSON: Your Honor, I would object here. I believe that is clearly in violation of the Court's instruction about making comments and inferences about the fact that the Defendant did not testify. I realize I had brought that up several different times only to urge the Jury to acknowledge the fact that—of that instruction. I believe this is going further than that.

█ While the prosecutor's comments were improvident, they came after counsel for the defendant had clearly focused the jury's attention on the fact of the defendant's silence. Thus the prosecutor's comment on rebuttal added nothing to the impact created by defense counsel. *State v. Nachtigall*, 296 N.W.2d 530 (S.D.1980). The comment of the state's attorney was therefore harmless error. SDCL 23A–44–14.[4]

---

4. SDCL 23A 44 14 reads: Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

■ Appellant also contends the evidence was insufficient to support the verdict. Without detailing the evidence, suffice it to say we conclude the reasonable inferences drawn therefrom sustain a rational theory of guilt. *State v. Antelope*, 304 N.W.2d 115 (S.D.1981); *State v. Moves Camp*, 286 N.W.2d 333 (S.D.1979). That and other issues presented have been reviewed and found to be without merit.

The judgment is affirmed.

WOLLMAN, C. J., and DUNN, J., concur.

MORGAN and HENDERSON, JJ., dissent.

MORGAN, Justice (dissenting).

I respectfully dissent.

The decisions upon which the majority rely all predate the statutory amendment of 1955,* which amendment, in my opinion, is clear and not subject to interpretation. The trial court acted contrary to the statute. The bandaid applied afterwards may comport with the authority of the older opinions, however, they have been superseded by the legislative enactment.

I would reverse and remand for new trial.

HENDERSON, Justice (dissenting).

Bailiffs are an integral part of the judicial branch of government. They keep order, provide security for the court officials, and generally attend to the needs of the trial judge and the jury. Their function is vital for no trial judge can supervise every facet of a jury trial. They are the right arm of the judge. ·

In South Dakota, all bailiffs must be sworn to do their duty as they embark upon their responsibilities in supervising a jury. Their oath is solemn and it is meaningful. Without any doubt, the primary duty of the bailiffs is to insure the integrity of the jury and to thereby preserve the sanctity of jury verdict upon which our entire system of American Jurisprudence is founded. Our state law specifically requires that one or more officers (bailiffs) must be sworn to keep the jury together before the jurors retire for deliberation. The law admonishes these officers to keep the jury in a private place and yet a place that is convenient. Food and drink, as the trial judge determines, shall be provided unto the jury. Should a trial judge determine that the jury separate during the night, again the bailiffs must supervise the overnight adjournment. SDCL 23A–25–5.

And how, pray tell, can these bailiffs supervise the jurors as the jurors go hither and thither about their individual activities? Obviously, they cannot. And how, to protect the integrity of the jury system and the sanctity of the jury verdict, must the bailiffs conduct themselves when the trial judge tells the jury to all go home and report the next morning? Obviously, the bailiffs are helpless to keep the very oath that they were sworn to uphold through His Honor. This decision, by blessing the act of the trial judge, literally permits officers of the trial courts to violate their oath.

One does not have to be a student of human nature to know that husbands and wives talk about the labors of the day and reveal the intimate thoughts of each other. A trial judge can admonish a man or woman to not discuss the case, even with his life mate, but that admonishment has little practical effect once husband and wife are in the privacy of their home. Again, the bailiffs, by state law, are sworn to not permit *any person* (emphasis mine), including themselves, to communicate with the jurors and again, this decision causes the bailiffs to violate their oath. It is obvious that a separation of the jury overnight, which the statute contemplates, is to discreetly permit the ordinary privacies of women and men serving on a jury to exist and to also permit them rest. SDCL 23A–25–5 does not permit a jury separation such as contemplated by the trial judge in this case or by the highest court of this state. The bailiffs are sworn "to keep them together." It is further evident that our lawmakers desired the jury not to separate,

* 1955 S.D.Sess.L. ch. 130.

such as is contemplated by this decision, for it was included in the statute in question that food and drink were to be supplied.

I note that one of the male jurors expressed in open court the question his wife indignantly posed when he separated from his fellow jurors and went home: "Where in hell have you been for this late?" Is this the type of setting the statute contemplates, i.e., "private," "convenient," and "under supervision of the officer or officers"? One cannot help but ponder as to whether this male juror's "deliberation" was peaceful and meditative. I further note he was the jury foreman.

An illustration of the danger that separation without supervision, such as we see in this case, spawned by a violation of the statute in question, may be seen in a telephone call by a wife of a defense witness. One Marilyn Nelson telephoned a juror friend, Enid Rogers. These two ladies were involved in the same church circle. The juror prepared a handwritten memo of the conversation and gave it to the bailiff. This phone call took place at 7:50 a. m., approximately two hours before the jury rejoined and thereupon took one hour and thirty-seven minutes to reach a verdict. The memo follows:

> Marilyn Nelson: I didn't know how late you were up so I wanted to wait until the kids were up and around
>
> Enid Rogers: Late
>
> Marilyn: Did you (decide or finish?)?
>
> Enid: No so I can't continue—(talking etc)
>
> Marilyn: I understand because I was on. When will you—?
>
> Enid: I don't know.
>
> Marilyn: Later today?
>
> Enid: I don't know—
>
> Marilyn: Ok goodbye—

My point is that an unsupervised jury is reachable and more readily accessible to contamination.

This decision, in effect, repeals SDCL 23A-25-5. For, indeed, as Justice Morgan points out, the majority relies upon decisions antedating the 1955 statutory amendment. This decision literally legislates and does violence to the great doctrine of separation of powers. As I review this decision and the motivation of the trial judge, could the underlying, unseen, and compelling reason be to avoid the cost of purchasing supper and lodging for juries, and particularly in this case, the cost of lodging? If so, may I remind the Bench and the Bar that the business of the courts is not economy, expediency or efficiency—it is justice. Hypothetically, should the rule be different for eluding a police vehicle (misdemeanor) case than a murder case (felony)? I think not. A right to a fair trial is as fundamental in a misdemeanor case as a felony case. Surely, if a man were on trial for murder, the new instruction (blessed now) of "let's all go home and go to bed and do not talk about this case to anyone" would be used hesitatingly. A vigilant trial judge would flinch at an instruction the majority blesses for fear of improper communication to a juror. And what is to restrict this blessing to just a late hour in the morning? Fatigue could come upon a jury and judge at five o'clock. My Brothers, this is a dangerous precedent and will come back to haunt trial judges, juries, and this Court. I cannot, and will not, join a decision that permits a creeping encroachment of improper influence by others upon a jury. This decision tampers with the heart and soul of a jury and everything that it stands for: an impartial body to be free of improper influence, free of disturbances and annoyances, free to calmly and collectively deliberate, and to render a just verdict under the evidence presented without the hubbub of the home milieu or elsewhere. A man's mind often reflects the color of his environment.

Appellant's motion to stay execution of the sentencing imposed (6 months in the Spink County jail and a $300 fine), was denied by the trial court, the same court which did not discharge the jury after it was informed the jury was deadlocked. The deadlock was at 9:25 p. m.; at 12:35 a. m., there was still no verdict; and thereupon the trial court, without one expression to either the state's attorney or defense counsel, summarily announced its decision to

violate the mandatory sequestration rule. Defense counsel vigorously objected to this procedure. During the early morning hours then, after their dismissal, some of the jurors changed their minds and voted for a guilty verdict. For, after reconvening at 10:00 a. m., on the following morning, at 11:37 a. m. the bailiff reported that the jury had reached a verdict. The record shows that the jurors were totally unsupervised for a period of nine hours. This was not a trivial, momentary separation. *Steensland*, cited in the majority, is inapposite.

"There is no definite rule by which to measure prejudicial error and each case must be decided on its own facts." *State v. Reddington*, 80 S.D. 390, 396, 125 N.W.2d 58, 62 (1963). Under the facts of this case, the trial procedure of permitting the jury to go unsupervised for nine hours apparently tipped the scales of justice against the appellant for, when the jury left the courthouse, the jury was deadlocked; on the following morning, the jury convicted appellant. In *State v. Pirkey*, 24 S.D. 533, 536, 124 N.W. 713, 715 (1910), we said: "Prejudicial error is such error as in all probability must have produced some effect upon the final result of the trial, namely, the verdict of the jury."

There are many cases cited under Separation of Jury in Criminal Case after Submission of Cause—Modern Cases, 72 A.L.R.3d 248 (1976), pertaining to the general issue discussed in the majority and minority opinions. A fair reading of this exhaustive treatise brings one to the conclusion that the case holdings turn on the wording of the statute in each state. Considering this state's specific statute which absolutely mandates supervision of the jury by court officers upon the jury's separation, this dissent is backed by respectable authority in the collection of cases therein contained. But, specifically, it appears that my viewpoint follows the overwhelming majority rule *where the jurors are under the direct supervision or custody of the court officers* when the jury has been permitted to separate. 72 A.L.R.3d 270, § 12 (1976). That the jurors are required to be kept in custody of an officer or officers at all times when they are out of court, whether as a group or individually, appears to be a given. *Id.* And there is no way the majority opinion can write around this phrase "under the supervision of the officer or officers."

The most critical stage of a trial is the deliberation of the jury. It is the American system of justice at work. I would not suffer it to be denigrated. Therefore, I respectfully dissent and would reverse the judgment of conviction and grant a new trial.