THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ISIDORE TUMEN, JACK ZIMBERG, DAVID ROSEN, JOSEPH RAPPAPORT and LOUIS NELSON, Defendants.

Court of General Sessions of County of New York, January 18, 1937.

*William Copeland Dodge, District Attorney [Harold Hastings, Assistant District Attorney,* of counsel], for the plaintiff,

*Markewich & Null,* for the defendants.

FRESCHI, J. This is a motion addressed to the discretion of the court to vacate its order herein, approving the direction of the grand jury that the district attorney file an information against these defendants in the Court of Special Sessions of the City of New York for the crimes of coercion and conspiracy, and the defendants pray for such other and further relief as to the court may seem just and proper in the premises.

Upon the argument of this motion, defendants' counsel urged " that if the court so desires it may, in its discretion, either vacate such order of approval or, in the alternative, grant an inspection of the minutes of the grand jury on which the direction was made by the grand jury, so that counsel may then move to vacate such order of approval, based upon such minutes."

The district attorney concedes that this motion is the proper procedure to take in this case; and he does not question the court's power to vacate its own order.

Section 742 of the Code of Criminal Procedure establishes the procedure or preliminary steps by which the Court of Special Sessions can acquire jurisdiction over misdemeanors and the accused.

In such cases this court is empowered by statute to make its order of approval only when it is satisfied that the direction of the grand jury is proper and the case should be prosecuted in the Court of Special Sessions; but the clear intent of the Legislature was to impose a duty upon this court to protect the accused against possible injustice or compelling an accused to answer and stand trial on an information directed by the grand jury, whenever it appears that insufficient or illegal evidence forms the basis for its direction. The presumption of legality is in favor of the proceedings until successfully attacked. No person should be compelled, however, to answer an accusation for a crime, whether it be a felony or a misdemeanor, unless it is based on sufficient legal evidence (See *People ex rel. Hirschberg* v. *Supreme Court*, 269 N. Y. 392; *People* v. *Klaw*, 53 Misc. 158; *People* v. *Glen*, 173 N. Y. 395); and an inspection of the grand jury minutes may be granted the accused, so that he may move to vacate the order of approval, only when valid grounds and reasons appear to the court to warrant it. (See *People* v. *Levine*, 161 Misc. 336.) The granting of such an order, in either case, is a judicial act and sound judicial discretion must be exercised in each instance. (See *Matter of Dodge* v. *Supreme Court of State of N. Y.*, 249 App. Div. 103; *Supervisors* v. *Briggs*, 2 Den. 26; *Matter of Cooper*, 22 N. Y. 67; *People ex rel. Clark* v. *Adel*, 129 Misc. 82.) Should the court that approved the grand jury's direction subsequently be apprised, before the trial in the Court of Special Sessions, that error was committed in signing the order of approval, it then becomes the court's duty, as it is the right of the defendant, to have such error corrected by vacating its order of approval and to disapprove the grand jury's direction. " It is quite evident that the result of such disapproval would be that the district attorney would have the alternative of proceeding with the case either in the Magistrate's Court, or to resubmit the same to another grand jury, there to be prosecuted either by indictment, or, again, to make a direction based on legal and sufficient evidence to the district attorney, on approval of the court, to file an information in the Court of Special Sessions."

This prosecution is the result of a general so-called John Doe investigation on November 9, 1936, conducted by the October, 1936, term additional grand jury. The proceeding, which was not aimed at any particular individual or individuals, followed two other proceedings or examinations conducted by the same grand jury on October 14, 1936, wherein certain individuals were actually accused of crime, arising out of labor union relations, working conditions, disputes and the activities of some of its officers and members.

These facts appear from an examination of the grand jury records, submitted on this motion upon consent of the parties in this action. It also appears that on October 21, 1936, Louis Nelson wrote a letter to the foreman of that grand jury in which he made statements regarding the district attorney's office, in connection with the union of which Nelson was the head. He was thereupon called as a witness, and appeared voluntarily on October 27, 1936, but refused to sign a waiver of immunity. The foreman of the grand jury advised Nelson that that body would like to go into the subject of the letter; and, although Nelson declined to sign a waiver, he requested that the grand jury hear him. Thereupon, Mr. Hastings, assistant district attorney, in charge of the grand jury, stated to Nelson that the grand jury was investigating charges against certain men, and he added: " It may be in the course of your testimony that something might develop implicating you in the charges. The grand jury want to hear you, but what you say may be used against you. For that reason you are given no protection," and the witness responded. " If you want to swear me, I will answer, I will take the oath." He was sworn and examined at some length, concerning the communication which he, Nelson, had sent to the grand jury; and besides, he volunteered to produce certain records on the following Thursday.

On November 9, 1936, the grand jury examined a number of witnesses whose testimony involved Louis Nelson. On that same day he was called before the grand jury and Mr. Hastings advised the defendant: " At the direction of the Grand Jury, I have asked you to come here and warn you that evidence has been brought against you which requires explanation. We do not want to hear your explanation if you do not waive immunity. Now, you said you were going to consult counsel." The following colloquy then took place: Mr. Nelson: " If there are any charges against me the Grand Jury has a perfect right to indict me." Mr. Hastings: " We know their rights very well. The last time action was taken here you answered that you didn't get a square deal. If you want to make an explanation here, of course, you can only make it under a waiver of immunity." Mr. Nelson: " I think you heard my reply, gentlemen." Mr. Hastings: " All right." A Juror: " You understand the inference we draw from your refusal to waive immunity is not favorable to you, Mr. Nelson." Mr. Nelson: " I think, gentlemen, that the Grand Jury probably resents the offer of the waiver of my letter before you. That is probably one of the reasons that you requested me to sign a waiver of immunity." Mr. Hastings: " There is no speculation as to why. Either you do or

you don't." Mr. Nelson: " All right, there are two sets of laws, one for one citizen and another one for another. I just want to find out with reference to the documents I brought before the Grand Jury, the financial statements." Mr. Hastings: " That is all." Mr. Nelson: " But the financial statements have been here under investigation." Foreman: " We would like to keep them further." Mr. Nelson: " That is all right, I only want to know."

The defendant Louis Nelson now contends that he was compelled to testify against himself before a biased grand jury, as indicated by the remark of one of the jurors regarding the refusal to waive immunity. I find nothing in the record of the grand jury proceedings that establishes a violation of said defendant's constitutional rights (*People* v. *Bermel*, 71 Misc. 356), such as would warrant a disclosure and review of the testimony before the grand jury, upon which the order of approval herein was made and which counsel now seeks to have vacated and set aside. He testified voluntarily in respect to the subject-matter of his letter. Thereafter he was not permitted to testify. And so far as the alleged prejudice of the grand jury is concerned, the unfavorable inference which one of the jurors stated would be drawn from the refusal to waive immunity might, under certain circumstances, constitute some evidence of bias such as would warrant action by this court in setting aside an indictment or an order of transfer to the Court of Special Sessions where the evidence was so meagre as to raise a serious question regarding its sufficiency. Here I find ample, competent and legal evidence to support the action of the grand jury that makes out that kind of a *prima facie* case, which, if uncontradicted, would warrant a conviction. This is all that the law requires. (See *People* v. *Hebberd*, 96 Misc. 617.)

On November 13, 1936, the grand jury certified that it was satisfied from the evidence presented to it that there was cause to believe that the crimes of coercion and conspiracy were committed by Isidore Tumen, Jack Zimberg, David Rosen, Joseph Rappaport and Louis Nelson in the county of New York from on or about the 1st day of September, 1936, down to and including November 8, 1936, and the grand jury directed that said crimes should be prosecuted in the Court of Special Sessions by information and directed the district attorney of the county of New York to make and file an information in the Court of Special Sessions of the City of New York, county of New York, against the said named persons as defendants for said crimes. This order was approved pursuant to section 742 of the Code of Criminal Procedure on November 13, 1936.

When we consider the interests of the People as well as those of the defendants, justice must not be hampered by reasons that cannot with propriety be ignored. Under the circumstances of this case, a new investigation is not made necessary where the objective facts are so clear. Assuming there was error in the judgment of one juror, his frame of mind cannot be imputed to the remaining jurors, except by a positive showing that the juror's vote made possible the action of the grand jury. Conjecture should not be a swaying force; instead, we must think straight. In the absence of evidence to support the claim of bias by one influencing all the other jurors, illegality of conduct should not be presumed. The moving parties must establish it affirmatively. Who can tell what influence, if any, such a remark or state of mind had on others who may have heard it; and in this particular no one should indulge an arbitrary conclusion. It has often been said that the judicial process in dealing with personalities requires proof positive and no " artificial method of reasoning " must be employed. I am of the opinion that this court must seek to support the action of the grand jury wherever possible and not seek to accomplish the opposite result by roving for reasons to undermine it where there is an absence of circumstances in the proof to justify it. The juror's statement is a factor from which one might justly infer bias. How far this went in the matter of judgment outside the individual juror does not appear.

A display of unfairness by one grand juror does not justify the assumption that prejudice permeated the entire deliberations of the entire jury body. Besides, unanimity was not required; therefore, the burden to prove illegality must be sustained by those who attack the action of the grand jury.

A grand jury, free from prejudice and partiality, may receive evidence which would be admissible upon a trial (Code Crim. Proc. § 256; *People* v. *Moskowitz,* 196 N. Y. Supp. 634); and where, as here, there can be no serious question about the sufficiency of the evidence as it is understood by this court, any prejudicial statement volunteered by a single juror, speaking for himself, is, as defendants' counsel admits, innocuous and harmless. (See *People* v. *Doyle,* 107 Misc. 268.) The record examined does not disclose that amount of irregularity which destroys the whole proceeding. Taking the facts as they are contained in the testimony, the court is able to judge that a clear case has been made out as against all defendants.

The record of the proceedings before the grand jury shows that some hearsay and other incompetent evidence, regarding alleged threats or actual violence, was received, which the assistant district attorney conducting the examination should have avoided to prevent any claim of prejudice affecting substantial rights such as would

invalidate the proceedings. Scrupulous care ought to be exercised in presenting evidence before a grand jury so that only competent evidence be received in keeping with the mandate of the statute. In a close case on the proof it might be necessary in all fairness to set aside all such proceedings, necessitating starting *de novo*. However, there is an abundance of proper legal testimony here, affecting the defendants named in the several informations referring to the cases of *Hornick, Inc.*, and *American Braid Trimming Company, Inc.*, in support of the action of the grand jury; and this court would not be warranted in interfering with the prosecutions already instituted.

It is not my task here, as a judge, to balance any conflicting claims there may be, or to settle any interests one way or the other and thus " determine which of several opposing individual claims the law should favor in order to promote social well-being " or economic betterment. These are all matters to be urged before the trial court.

The motions must be, accordingly, denied.